Opinion
 

 GEORGE, C. J.
 

 In Wiley v. County of San Diego
 
 (1998) 19 Cal.4th 532 [79 Cal.Rptr.2d 672, 966 P.2d 983], we held that in a legal malpractice action against an attorney for alleged negligence in representing the plaintiff (the accused in a criminal action), the plaintiff must establish, as a necessary element of the malpractice cause of action, that he or she is actually innocent of the offense charged in the underlying criminal proceeding. Our holding in
 
 Wiley
 
 applies to legal malpractice claims asserted against both private attorneys and public defenders, and in that case we were not confronted with the issue whether a public defender is entitled to statutory immunity for his or her acts or omissions in representing a criminal defendant. We granted review in the present case to decide whether the immunity for discretionary acts set forth in Government Code section 820.2 applies to a deputy public defender’s representation of a defendant in a criminal action.
 
 [1]
 

 Defendant Julie Leeds is a deputy public defender who represented plaintiff Glenn Russell Earner in a criminal action that resulted in Earner’s conviction. After the conviction was set aside and Earner obtained a judicial determination of factual innocence, he filed this legal malpractice action alleging that his conviction and incarceration resulted from Leeds’s negligence in representing him. The trial court concluded that Leeds is immune from liability pursuant to section 820.2, because her alleged negligence consisted of discretionary acts or omissions. The Court of Appeal reversed.
 

 As we shall explain, the acts or omissions of a deputy public defender in representing a defendant in a criminal action do not involve the type of basic
 
 *680
 
 policy decisions that are insulated from liability pursuant to section 820.2. Instead, legal representation provided by a deputy public defender entails operational (as opposed to policy) decisions that are incident to the normal functions of the office of the public defender. Once the decision is made to provide legal services, a deputy public defender’s actions implementing that decision do not qualify for the immunity afforded by section 820.2. Although the Court of Appeal utilized a faulty analysis, it correctly concluded that the trial court erred in entering summary judgment for Leeds. Accordingly, we shall affirm the judgment of the Court of Appeal.
 

 I
 

 On June 18, 1992, two men—one brandishing a handgun—robbed a Bank of America facility in El Segundo. A confidential informant subsequently contacted an El Segundo police officer and identified one of the robbers appearing in a bank surveillance photograph as an individual named Rusty, who resided on South Crenshaw Boulevard. A deputy sheriff matched the surveillance photograph with a previous booking photograph of plaintiff Glenn Russell Earner, whose last known address was on South Crenshaw. After viewing a photographic lineup including Earner’s booking photograph, one bank employee identified Earner as the individual wielding the handgun during the robbery. Another employee also identified Earner as one of the robbers.
 

 Earner was arrested based upon this information. The court appointed the Public Defender’s Office for the County of Los Angeles to represent Earner. At Earner’s preliminary hearing, one bank employee identified Earner as the robber who held a handgun and who wore clothing lighter in color than that worn by his accomplice. A police officer testified that another individual present at the bank on the day of the robbery had identified Earner from a photographic lineup as the robber who held a gun. Earner was held to answer and arraigned.
 

 The case initially was assigned for purposes of trial to Deputy Public Defender Debra Cole, but responsibility for Earner’s defense was transferred to defendant Julie Leeds sometime in late October or early November 1992. When Leeds received Earner’s case file, it contained an August 26, 1992, memorandum prepared by the Federal Bureau of Investigation (FBI). This memorandum stated that a confidential source had reviewed the bank surveillance photographs and recognized the bank robber who wore light-colored clothing as Raymond Bell.
 

 According to Leeds, she reviewed the FBI memorandum but concluded that it contained no information suggesting that the identification of Raymond Bell, as the bank robber who wore light-colored clothing, was by a
 
 *681
 

 second
 
 confidential informant—i.e., by an informant other than the individual who had contacted the El Segundo police officer. Leeds assumed that the FBI memorandum referred to the same informant who had identified Rusty (Bamer) as the man with a gun, and that this informant had identified Raymond Bell as Earner’s unarmed accomplice. She further believed that her colleague Cole had considered but rejected the possibility of filing a motion for disclosure of the identity of the confidential informant. Leeds, however, did not verify her assumptions by discussing the memorandum or its contents with Cole, the prosecutor, the FBI agent who prepared the memorandum, or other law enforcement officers involved in the investigation of the crime. Based upon her assessment of the memorandum’s significance, and because there was inadequate time before trial to prepare and file a motion regarding the confidential informant, Leeds did not attempt to file such a motion.
 

 A jury trial commenced on November 12, 1992. Throughout the proceedings, Bamer maintained that he was innocent, but he was convicted and sentenced to a prison term of 16 years. Approximately one month later, the prosecutor advised. Leeds that the confidential informant mentioned in the FBI memorandum was a second informant who had identified Raymond Bell as the suspect who had brandished a weapon. An FBI agent had indicated to the prosecutor his belief that Raymond Bell—not Bamer—was the robber wielding a gun.
 

 Leeds conveyed this information to Earner’s appellate counsel, and Bamer filed a petition for writ of habeas corpus in the superior court. The prosecutor, Cole, and Leeds advised the court of the contents of the FBI memorandum, and the People conceded the merits of the petition. In June 1993, the court set aside the judgment and vacated the sentence, and remanded Bamer into custody pending a new trial. Bamer, represented by privately retained counsel, then moved for disclosure of the identity of the FBI informant. After hearing testimony from federal agents who invoked a privilege not to disclose the informant’s identity, the court denied the motion. The superior court subsequently granted Earner’s motion for dismissal on the ground that nondisclosure of the informant’s identity might deprive Bamer of a fair trial. (See Evid. Code, § 1042, subd. (d).)
 

 On the same day that the criminal action against Bamer was dismissed, Raymond Bell was arrested for committing several bank robberies. Pursuant to a plea agreement, Bell pleaded guilty to three counts of bank robbery and admitted committing four others, including the Bank of America robbery for which Bamer had been convicted. In light of this development, in December 1993 the superior court granted Earner’s petition for a finding that Bamer
 
 *682
 
 was factually innocent of the Bank of America robbery. (See Pen. Code, § 851.8.)
 

 Earner then filed this action alleging several claims against a number of defendants, including a cause of action for legal malpractice against the deputy public defenders who represented him in the criminal prosecution. The complaint alleges that these deputy public defenders, including Leeds, negligently failed to (1) investigate the information they had received before trial regarding the FBI’s confidential informant, (2) file a motion for disclosure of the identities of the confidential informants, and (3) introduce exculpatory evidence that would have been revealed by such an investigation. Absent the negligence of these attorneys, Earner alleges, he would not have been convicted of bank robbery and incarcerated for more than one year for a crime that he did not commit.
 

 Leeds moved for summary judgment, contending among other things that the immunity set forth in section 820.2 for a public employee’s discretionary acts shielded her from liability. The trial court granted the motion after concluding that the acts of Leeds were quasi-legislative and that discretionary act immunity applied.
 

 The Court of Appeal reversed the judgment in favor of Leeds. The court determined that the acts of privately retained counsel and publicly appointed counsel should be measured by the same standard. According to the appellate court, because the Legislature has not
 
 clearly
 
 provided for discretionary act immunity for deputy public defenders, they remain subject to liability for legal malpractice until the Legislature chooses to extend such immunity. The court’s opinion expressly declined to reach Leeds’s contention that her decision not to file a motion seeking disclosure of the FBI informant’s identity was a discretionary act immunized under section 820.2. Nevertheless, the Court of Appeal stated: “Given the unambiguous nature of the August 26, 1992, FBI report, which Leeds had the ministerial duty to read and comprehend, we
 
 could
 
 conclude that harm resulted from her ministerial failure to do so.” (Italics added.)
 

 We granted review to consider the validity of the Court of Appeal’s conclusion.
 

 II
 

 Under the California Tort Claims Act (§ 810 et seq.), public employees are liable for their torts unless a statute provides otherwise. (§ 820, subd. (a).) One exception to this general rule of liability is found in section
 
 *683
 
 820.2, which codifies the common law immunity for the discretionary acts of a government official performed within the scope of his or her authority.
 
 (Caldwell
 
 v.
 
 Montoya
 
 (1995) 10 Cal.4th 972, 979-980 [42 Cal.Rptr.2d 842, 897 P.2d 1320]
 
 {Caldwell).)
 
 Section 820.2 states: “Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.” Leeds contends, and the trial court concluded as a matter of law, that Leeds is immune pursuant to section 820.2 because her allegedly negligent acts or omissions in representing Earner resulted from her exercise of discretion within the meaning of this statute.
 

 In reviewing the trial court’s ruling granting summary judgment for Leeds, we exercise our independent judgment and decide whether Leeds established undisputed facts that negate Earner’s claim or state a complete defense.
 
 {Romano
 
 v.
 
 Rockwell Internal, Inc.
 
 (1996) 14 Cal.4th 479, 487 [59 Cal.Rptr.2d 20, 926 P.2d 1114].) We also conduct de novo review of the trial court’s resolution of the underlying issues of statutory construction.
 
 (Regents of University of California v. Superior Court
 
 (1999) 20 Cal.4th 509, 531 [85 Cal.Rptr.2d 257, 976 P.2d 808].)
 

 For the purpose of determining whether the immunity in section 820.2 provides a complete defense to Earner’s legal malpractice claim, the following relevant facts are undisputed. Leeds is a deputy public defender who was assigned to represent Earner in a criminal action. She did not file a motion for disclosure of the identities of confidential informants mentioned in the case file or conduct an independent investigation regarding the informants or the information they revealed. Earner’s conviction subsequently was set aside, and he obtained a judicial declaration of factual innocence, based in part upon the information imparted by these informants. Earner claims that these omissions by Leeds were negligent and that, absent such negligence, he would not have been convicted and incarcerated.
 

 The parties further do not dispute the following points. Leeds, as a deputy public defender, is a public employee within the meaning of the California Tort Claims Act, and she acts within the scope of her employment when representing assigned clients charged with criminal offenses.
 
 (Briggs v. Lawrence
 
 (1991) 230 Cal.App.3d 605, 612-619 [281 Cal.Rptr. 578].) Deputy public defenders and privately retained counsel owe the same duty of care to their clients. (See
 
 Polk County
 
 v.
 
 Dodson
 
 (1981) 454 U.S. 312, 318, 321 [102 S.Ct. 445, 450, 451, 70 L.Ed.2d 509];
 
 Wiley v. County of San Diego, supra,
 
 19 Cal.4th 532, 542.) Therefore, Leeds is liable for injury caused by her professional negligence to the same extent as a private attorney, “[e]xcept as
 
 *684
 
 otherwise provided by statute
 
 (including Section 820.2) . . .
 
 .” (§ 820, subd. (a), italics added.)
 

 Despite the Legislature’s express reference to section 820.2 as an exception to the general rule that a public employee is liable for his or her torts, the Court of Appeal did not decide whether Leeds’s allegedly negligent acts or omissions in representing Earner were the result of her exercise of discretion within the meaning of section 820.2. Instead, the court emphasized that the acts of privately retained and publicly appointed counsel should be measured by the same standard, and that because the Legislature has not
 
 clearly
 
 provided for discretionary immunity for deputy public defenders, the general rule of liability controls. For this proposition, the Court of Appeal relied upon
 
 Ramos v. County of Madera
 
 (1971) 4 Cal.3d 685, 692 [94 Cal.Rptr. 421, 484 P.2d 93], which states that immunity is the exception to the general rule that a public employee is liable for his or her negligence, and that “[u]nless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail.”
 

 We agree with Leeds that the Court of Appeal erred in concluding that Leeds lacks immunity pursuant to section 820.2 solely because the Legislature has not clearly or specifically declared that
 
 deputy public defenders
 
 are immune from liability for professional negligence. In enacting section 820.2, the Legislature clearly
 
 has
 
 provided for immunity for injuries caused by acts or omissions that are the result of a public employee’s exercise of discretion, as that term is used in section 820.2. In determining whether discretionary act immunity applies with regard to the acts of a public employee, courts must consider whether the acts or omissions of the particular employee resulted from the exercise of discretion within the meaning of section 820.2. The approach taken by the Court of Appeal—that there is no immunity pursuant to section 820.2 unless the Legislature otherwise has provided specifically that a particular class of employees is immune—effectively would eliminate immunity for discretionary acts and render the entire text of section 820.2 surplusage.
 

 Because our task in reviewing the order granting summary judgment is to conduct an independent review of the trial court’s resolution of questions of law
 
 (Green v. Ralee Engineering Co.
 
 (1998) 19 Cal.4th 66, 72 [78 Cal.Rptr.2d 16, 960 P.2d 1046]), we shall proceed to consider whether the trial court correctly determined that Leeds’s alleged professional negligence resulted from her exercise of discretion within the meaning of section 820.2.
 

 As explained in
 
 Caldwell, supra,
 
 10 Cal.4th at page 981, not all acts requiring a public employee to choose among alternatives entail the use of
 
 *685
 
 “discretion” within the meaning of section 820.2. Under that statute, “[immunity is reserved for those
 
 ‘basic policy decisions
 
 [which have] . . . been [expressly] committed to coordinate branches of government,’ and as to which judicial interference would thus be ‘unseemly.’ [Citation.] Such ‘areas of quasi-legislative policy-making ... are sufficiently sensitive’ [citation] to call for judicial abstention from interference that ‘might even in the first instance affect the coordinate body’s decision-making process’ [citation].”
 
 (Caldwell, supra,
 
 10 Cal.4th at p. 981, original italics; bracketed text added by Caldwell.) On the other hand, there is no basis for immunizing lower level decisions that merely implement a basic policy already formulated.
 
 (Ibid.)
 
 The scope of the discretionary act immunity “should be no greater than is required to give legislative and executive policymakers sufficient breathing space in which to perform their vital policymaking functions.”
 
 (Tarasoff v. Regents of University of California
 
 (1976) 17 Cal.3d 425, 445 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]
 
 (Tarasoff))
 

 In determining whether an act of a public employee is discretionary under section 820.2, we have distinguished between the employee’s operational and policy decisions.
 
 (Caldwell, supra,
 
 10 Cal.4th at pp. 981-982, citing cases.) For example, in
 
 Sanborn v. Chronicle Pub. Co.
 
 (1976) 18 Cal.3d 406, 415 [134 Cal.Rptr. 402, 556 P.2d 764], we concluded that, although a decision by the clerk of a city and county to discuss a particular matter with the press may have been within the clerk’s discretion (as that term is used in common parlance), it was not “in the nature of a ‘basic policy decision’ made at the ‘planning’ stage of City’s operations” but rather fell within the category of routine duties incident to the normal operations of the office of the clerk. In contrast, in
 
 Caldwell, supra,
 
 10 Cal.4th at page 983, we held that the decision by individual members of a school board whether to vote to renew a superintendent’s employment contract was “a peculiarly sensitive and subjective one, with fundamental policy implications. . . . flO Judicial abstention with respect to the individual participants is thus appropriate. Where such an important policy issue is at stake, it would be unwise and unseemly to hold individual board members personally accountable at law for things they said or considered in the course of deliberations . . . .” (Fn. omitted.)
 
 [2]
 

 Our previous decisions construing section 820.2 have not determined whether a public employee charged with a professional duty of care in
 
 *686
 
 rendering services to the employee’s client—such as a publicly employed attorney or health care professional—makes policy, as opposed to operational, judgments in discharging his or her duties to the client. We considered a related issue, however, in
 
 Tarasoff, supra,
 
 17 Cal.3d 425, which held that psychologists employed by the government are not immune from liability under section 820.2 for the failure to warn a third person of a risk of harm posed by a patient. We reasoned that the employee’s decision whether to disclose such a risk of danger may require the exercise of considerable judgmental skills, but that the failure to warn does not rise to the level of a basic policy decision for which the statute provides immunity.
 
 (Tarasoff, supra,
 
 17 Cal.3d at p. 446.)
 
 [3]
 
 Our decision stated: “We emphasize that our conclusion does not raise the specter of therapists employed by the government indiscriminately being held liable for damage despite their exercise of sound professional judgment. We require of publicly employed therapists only that quantum of care which the common law requires of private therapists. The imposition of liability in those rare cases in which a public employee falls short of this standard does not contravene the language or purpose of Government Code section 820.2.”
 
 (Tarasoff, supra,
 
 17 Cal.3d at pp. 446-447.)
 

 Our decisions also have stated that a public employee’s initial decision whether to provide professional services to an individual might involve the exercise of discretion pursuant to section 820.2, but that once the employee undertakes to render such services, he or she is not immune for the negligent performance of professional duties that do not amount to policy or planning decisions. In
 
 Johnson, supra, 69
 
 Cal.2d 782, we discussed with approval the Court of Appeal’s decision in
 
 Sava
 
 v.
 
 Fuller
 
 (1967) 249 Cal.App.2d 281 [57 Cal.Rptr. 312], which considered whether a botanist employed by the state was immune in an action for negligence alleging that he had erred in analyzing the toxicity of a substance ingested by the plaintiff.
 
 *687
 
 The Court of Appeal concluded that the botanist had exercised discretion by agreeing to analyze the substance, but that once he had decided to do so, the law required the botanist to exercise due care in performing that service. “[0]nce the determination has been made that a service will be furnished and the service is undertaken, then public policy demands (except when the Legislature specifically decrees otherwise) that government be held to the same standard of care the law requires of its private citizens in the performance of duties imposed by law or assumed.”
 
 (Id.
 
 at p. 290.) Our decision in
 
 Johnson
 
 explains that
 
 Sava
 
 and other cases establish the principle that, although a basic policy decision may be discretionary and thus warrant governmental immunity, subsequent operational actions in the implementation of that basic decision still must face case-by-case adjudication on the question of negligence.
 
 (Johnson, supra,
 
 69 Cal.2d at p. 797; see also
 
 McCorkle v. City of Los Angeles
 
 (1969) 70 Cal.2d 252, 261-262 [74 Cal.Rptr. 389, 449 P.2d 453].)
 

 As they relate to publicly employed health professionals, the foregoing principles are reflected in a particular provision of the California Tort Claims Act. Section 855.6, which was enacted at the same time as section 820.2, provides immunity for a public employee’s failure to make an adequate physical or mental examination for the purpose of determining whether an individual has a condition that would endanger the individual or others. The statute specifies, however, that this immunity does
 
 not
 
 extend to an examination or diagnosis performed for the purpose of treating the individual.
 
 [4]
 
 Although we are not confronted with any issue arising under section 855.6 in the present case, we believe that this statute affords some guidance in ascertaining the scope of the immunity provided for discretionary acts. Section 855.6 implicitly suggests that the provision of professional health services, including the making of decisions regarding what constitutes an adequate examination for a particular purpose, does not constitute an act resulting from the exercise of discretion within the meaning of section 820.2; otherwise, the additional immunity set forth in section 855.6 would have been unnecessary. Furthermore, the exception in section 855.6 for examinations conducted for the purpose of treatment indicates a legislative intent not to eliminate the preexisting liability to patients seeking diagnosis and treatment by publicly employed health professionals. (See
 
 Caldwell, supra,
 
 10 Cal.4th at p. 980 [the immunity for discretionary acts provided in § 820.2 restated preexisting California law];
 
 Muskopf v. Coming Hospital Dist.
 
 
 *688
 
 (1961) 55 Cal.2d 211, 220-221 [11 Cal.Rptr. 89, 359 P.2d 457] [no common law discretionary act immunity for negligent treatment of a patient in a public hospital];
 
 Bohrer v. County of San Diego
 
 (1980) 104 Cal.App.3d 155, 161-162 [163 Cal.Rptr. 419] [no immunity under § 820.2 for negligence in prescribing medication to a patient of a county clinic].) The Law Revision Commission comments regarding section 855.6 support this view: “[The immunity] does not apply to examinations for the purpose of treatment such as are made in doctors’ offices and public hospitals. In those situations, the ordinary rules of liability would apply.” (Cal. Law Revision Com. com., reprinted at 32 West’s Ann. Gov. Code (1995 ed.) foil. § 855.6, p. 487; see
 
 Creason v: Department of Health Services
 
 (1998) 18 Cal.4th 623, 636-637 [76 Cal.Rptr.2d 489, 957 P.2d 1323].)
 

 Although publicly employed health professionals and deputy public defenders obviously perform different services for distinct purposes, a deputy public defender, like a health professional, must exercise considerable judgment in making decisions regarding the type and extent of services necessary to discharge his or her duty of care to clients. In addition, the actual performance of such services ordinarily requires a high level of skill and often involves many choices among complex alternatives. As the foregoing decisions instruct, however, even if the initial determination whether to provide representation to a certain class of individuals or to represent a particular defendant is a sensitive policy decision that requires judicial abstention to avoid affecting a coordinate governmental entity’s decision-making or planning process (see
 
 In re Brindle
 
 (1979) 91 Cal.App.3d 660, 681-682 [154 Cal.Rptr. 563]), and even though a deputy public defender’s actual representation of a client requires the exercise of considerable skill and judgment, such representation generally does not involve discretionary acts within the meaning of section 820.2 (i.e., policy or planning decisions). Instead, such services consist of operational duties that merely implement the initial decision to provide representation and are incident to the normal functions of the office of the public defender.
 

 Leeds concedes that certain actions undertaken by a public defender in representing a client are not discretionary acts within the meaning of section 820.2. For example, she states that the actual preparation and filing of a motion for disclosure of the identity of a confidential informant would be a ministerial act, and that a deputy public defender could be liable for negligently missing the filing deadline or omitting certain information from the motion. But, according to Leeds, the initial decision whether to file such a motion is inherently discretionary and should not be subject to later judicial scrutiny in a civil action.
 

 
 *689
 
 We disagree. Leeds does not explain why the decision whether to file a motion is a discretionary act within the meaning of section 820.2 while the decision regarding what information should be included in the motion is not. Both decisions require the exercise of professional judgment in light of an evaluation of all the circumstances of the case, and both may cause injury to the client if made without the exercise of due care. Neither act, however, properly may be characterized as a sensitive decision implicating fundamental policy concerns warranting judicial abstention. Indeed, Leeds admits that Earner’s allegation that she engaged in negligent acts and omissions concerns “the routine, fundamental tasks of providing a criminal defense.” “[Cjourts encounter this type of allegation daily and are well suited to resolve its validity under traditional tort doctrine.”
 
 (Johnson, supra,
 
 69 Cal.2d at p. 797.)
 

 Allegations of deficient performance by counsel also are encountered routinely in connection with claims of ineffective assistance of counsel made in the course of appellate and collateral review of criminal convictions. The Sixth Amendment confers a right to the reasonably effective assistance of counsel acting “ ‘within the range of competence demanded of attorneys in criminal cases.’ [Citation.]”
 
 (Strickland
 
 v.
 
 Washington
 
 (1984) 466 U.S. 668, 687 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674].) Consequently, deputy public defenders, like all criminal defense attorneys, always may anticipate that a court may examine their representation for substandard performance. The same standard of care governing claims of ineffective assistance of counsel applies in a civil legal malpractice action.
 
 (Wiley v. County of San Diego, supra,
 
 19 Cal.4th at p. 542.) In addition, if incompetent representation results in the modification or reversal of a judgment, counsel must be reported to the State Bar. (Bus. & Prof. Code, § 6086.7, subd. (b).) Therefore, subjecting deputy public defenders to civil tort liability for the same deficient conduct that constitutes ineffective assistance of counsel does not add measurably to the demands already imposed upon all criminal defense attorneys. Nor does it involve an unseemly interference by the judiciary in the policy decisions of a coordinate branch. (See
 
 Caldwell, supra,
 
 10 Cal.4th at p. 983.) Rather, the acts of these attorneys simply are subject to the same examination by a court or jury as are the acts of any private attorney who represents a client in a criminal action. (See Millich,
 
 Public Defender Malpractice Liability in California
 
 (1989) 11 Whittier L.Rev. 535, 538-539.) Therefore, once a deputy public defender has undertaken to represent a defendant in a criminal action, the attorney’s actions implementing the basic decision to provide representation—to the extent they do not implicate
 
 *690
 
 policy-level decisions—are subject to case-by-case judicial review for alleged negligence. (See
 
 Johnson, supra,
 
 69 Cal.2d at p. 797.)
 
 [5]
 

 Leeds advances various policy reasons why deputy public defenders should be immune for their decisions made in the course of representing a client. She observes that, unlike private counsel, deputy public defenders may not choose their clients and, indeed, sometimes must provide representation over the objection of their clients. This circumstance, Leeds asserts, increases the likelihood of conflict between attorney and client and the risk of malpractice actions. Leeds maintains that permitting liability for legal malpractice in this context would chill a public defender’s zealous representation and not serve the best interest of his or her client. For example, she observes that, in order to avoid liability, a deputy public defender might seek a continuance over the client’s objection to conduct an investigation the attorney considers unnecessary, or might be unwilling to cooperate with appellate counsel regarding claims of ineffective assistance of trial counsel.
 

 Deputy public defenders undoubtedly face difficulties and challenges not encountered by most private counsel. (See Sadoff,
 
 The Public Defender as Private Offender: A Retreat from Evolving Malpractice Liability Standards for Public Defenders
 
 (1995) 32 Am. Crim. L.Rev. 883, 887-894.) Notwithstanding the circumstances suggesting that these public employees should be insulated from civil malpractice liability, however, there also are countervailing policies that support a contrary view. As established above, deputy public defenders and private attorneys owe the same duty of care to their clients. Denying criminal defendants a remedy for malpractice simply because they are indigent and represented by a deputy public defender could be perceived as unfair. Furthermore, subjecting deputy public defenders to civil liability for negligence would not add measurably to their preexisting duty to act competently; nor would it affect their decisions any more than the decisions of private counsel are affected by the prospect of malpractice liability. An attorney engaged in litigation is granted latitude in choosing among legitimate but competing considerations, and is not liable for an informed tactical choice within the range of reasonable competence.
 
 (People
 
 v.
 
 Moore
 
 (1988) 47 Cal.3d 63, 82 [252 Cal.Rptr. 494, 762 P.2d 1218];
 
 Kirsch
 
 v.
 
 Duryea
 
 (1978) 21 Cal.3d 303, 309 [146 Cal.Rptr. 218, 578 P.2d 935, 6 A.L.R.4th 334].) Moreover, in the absence of bad faith, a public employee— including a deputy public defender—who is sued personally, on the basis of the performance of his or her duties, may obtain both defense and indemnity from the employer, which is vicariously liable for the torts of its employees.
 
 *691
 
 (See §§ 815.2, subd. (a), 825 et seq.;
 
 Caldwell, supra,
 
 10 Cal.4th at pp. 980-981.) “Hence, fears that personal exposure to damage suits and judgments would deter the vigorous performance of public responsibilities are no longer a policy basis for immunity. [Citation.]”
 
 (Caldwell, supra,
 
 10 Cal.4th at p. 981.) Finally, a deputy public defender’s exposure to liability for legal malpractice is circumscribed by the requirement that a defendant in a criminal action must prove his or her actual innocence by a preponderance of the evidence before prevailing on a claim against his or her attorney for negligent representation in the criminal proceeding.
 
 (Wiley v. County of San Diego, supra,
 
 19 Cal.4th at p. 545.)
 

 Resolving the competing policy considerations regarding immunity for deputy public defenders is not a judicial task, however. We have concluded that the immunity conferred by section 820.2 does not extend to the acts of a deputy public defender in representing a criminal defendant. To the extent the particular circumstances encountered by deputy public defenders—or other policy reasons—warrant an exception to the established principles governing the scope of discretionary act immunity pursuant to section 820.2, the matter is best addressed by the Legislature.
 
 [6]
 

 In sum, the actions of a deputy public defender in representing an assigned client in a criminal action generally do not involve the type of basic policy decisions that our past decisions have held are within the scope of the immunity afforded by section 820.2. Although such legal representation entails difficult choices among complex alternatives and the exercise of professional skill, for purposes of section 820.2 the attorney’s actions ordinarily involve operational judgments that implement the initial decision to provide representation to the client. Holding deputy public defenders accountable at law for legal malpractice in this context does not result in
 
 *692
 
 unwarranted judicial interference in the affairs of the other branches of government, but rather simply subjects these public employees to the same principles of tort law applicable to private attorneys performing identical professional services in the same type of proceedings.
 

 Ill
 

 The judgment of the Court of Appeal is affirmed.
 

 Mosk, J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.
 

 [1]
 

 Further undesignated statutory references are to the Government Code.
 

 [2]
 

 Amici curiae (59 California cities and towns) criticize our long-standing reliance upon the distinction between policy and operational decisions in determining whether immunity exists pursuant to section 820.2. They urge us to reconsider and overrule
 
 Johnson
 
 v.
 
 State of California
 
 (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]
 
 (Johnson)—ova
 
 first decision construing the scope of section 820.2—and its progeny. Amici curiae contend that
 
 Johnson
 
 unduly limits the scope of discretionary act immunity to policy and planning decisions. According to amici curiae, the distinction between planning and operational decisions is unworkable and leads to haphazard results, and a better approach is that
 
 *686
 
 embodied in the federal rule providing immunity for certain operational decisions that involve the exercise of judgment but that do not necessarily involve policymaking or planning (see
 
 United States v. Gaubert
 
 (1991) 499 U.S. 315, 322-334 [111 S.Ct. 1267, 1273-1279, 113 L.Ed.2d 335]).
 

 Even if we were inclined to disagree with the principles set forth in
 
 Johnson,
 
 we do not believe it would be appropriate to overrule or disapprove more than three decades of precedent applying authoritative, settled statutory construction that has been central to the analysis and holdings of these decisions. During this period, the Legislature has not altered the general scope of the immunity conferred by section 820.2 as construed by this court. The principles underlying the doctrine of stare decisis apply with special force in the context of statutory interpretation, because the Legislature remains free to alter what we have done.
 
 (Hunt
 
 v.
 
 Superior Court
 
 (1999) 21 Cal.4th 984, 1005 [90 Cal.Rptr.2d 236, 987 P.2d 705].)
 

 [3]
 

 Compare
 
 Thompson
 
 v.
 
 County of Alameda
 
 (1980) 27 Cal.3d 741, 748-749 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701] (county immune from liability for selection of custodian and degree of supervision for juvenile offender, because acts entailed both the exercise of judgment and protected policy decisions).
 

 [4]
 

 Section 855.6 states in relevant part: “Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee ... is liable for injury caused by the failure ... to make an adequate physical or mental examination . . . for the purpose of determining whether [a] person has a . . . condition that would constitute a hazard to the health or safety of himself or others.”
 

 [5]
 

 Neither party contends that the allegedly negligent acts of Leeds involved decisions establishing or implicating any generally applicable policy of the office of the public defender. We express no view regarding the application of section 820.2 to such decisions.
 

 [6]
 

 In recent years, the Legislature twice sought to provide immunity for deputy public defenders, without success. (Sen. Bill No. 1876, vetoed by Governor, July 20, 1998, Sen. Final Hist. (1997-1998 Reg. Sess.) p. 1319; Sen. Bill No. 763, vetoed by Governor, Sept. 27, 1999, Sen. Weekly Hist. (1999-2000 Reg. Sess.) June 22, 2000, p. 178.)
 

 Some states expressly have specified statutory immunity for deputy public defenders. (E.g., Conn. Gen. Stat. Ann. § 4-165 (West 1998); Fla. Stat. Aim. § 768.28, subd. (9)(b)(2) (West 1997); Tenn. Code Ann. § 8-14-209.) Other jurisdictions without such a specific statutory immunity are divided on the issue whether deputy public defenders enjoy either common law or general statutory immunity for legal malpractice. (See Note,
 
 Malpractice Immunity: An Illegitimate and Ineffective Response to the Indigent-Defense Crisis
 
 (1996) 45 Duke L.J. 783, 791-802 [collecting cases]; Annot., Public Defender’s Immunity from Liability for Malpractice (1981) 6 A.L.R.4th 774, and later cases (2000 supp.) p. 118.) These out-of-state decisions are not instructive in the present case, however, because most rely upon general policy concerns or a determination that a deputy public defender is not a public employee, and none consider the applicability of an immunity for discretionary acts similar to that set forth in section 820.2 and as construed by this court. (But see
 
 Ramirez
 
 v.
 
 Harris
 
 (1989) 105 Nev. 219 [773 P.2d 343, 344] [noting, without analysis, that Nevada’s statutory discretionary act immunity bars malpractice claims against public defenders].)