Filed 11/18/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TINA CUFF, Plaintiff and Appellant, v. GROSSMONT UNION HIGH SCHOOL DISTRICT et al., Defendants and Respondents. | D062278 (Super. Ct. No. 37-2010-00071229-CU-NP-EC) |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Judgment reversed; prejudgment order affirmed in part.

Gordon A. Glenn for Plaintiff and Appellant.

Winet, Patrick & Weaver, Randall L. Winet, Marilyn Perrin and Amelia M. Yurch for Defendants and Respondents.

I.

INTRODUCTION

Plaintiff Tina Cuff appeals from a judgment entered in favor of defendants Grossmont Union High School District (Grossmont) and Susan Saunders after the trial court granted summary judgment in favor of the defendants.

Cuff filed this action against Grossmont and Saunders after Saunders prepared a written report of suspected child abuse pursuant to provisions of the Child Abuse and Neglect Reporting Act (CANRA) (Pen. Code, § 11164 et seq.),[1] stating that she suspected that Cuff had abused her children, and gave a copy of that report to Cuff's ex-husband, the father of Cuff's children. CANRA provides that these reports shall be confidential, and limits the disclosure of such reports to certain statutorily-identified entities only.

The trial court determined that Saunders and Grossmont were immune from suit arising out of Saunders's conduct, and granted the defendants' motion for summary judgment. The court declined to consider Cuff's motion for summary judgment on the ground that the motion was untimely.

On appeal, Cuff contends that the trial court erred in granting summary judgment in favor of defendants, arguing that Saunders is not entitled to immunity for her conduct. Cuff further argues that the trial court incorrectly ruled that her own motion for summary judgment was untimely.

We conclude that Saunders's conduct does not qualify for immunity under the applicable statutes. We therefore reverse the judgment of the trial court in favor of defendants. However, we affirm the trial court's prejudgment order rejecting Cuff's motion for summary judgment as untimely. The matter is remanded to the trial court for further proceedings.

---

[1]     All statutory references are to the Penal Code unless otherwise specified.

2

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual background*

Cuff and James Godfrey have two sons, T.G. and D.G.  At the time of the relevant incident, T.G. was 13 years old and D.G. was 16 years old.

Cuff and Godfrey began divorce proceedings in 1997.  At that time, Cuff was awarded sole legal and physical custody of their sons.  In 2001, a few years after their divorce, Cuff made arrangements with Godfrey for him to have regular visitation with the boys.

At some point, Cuff asked Godfrey to move into her home so that he could assist her in taking care of the boys while she was working.  Godfrey moved in on a permanent basis as of August 2009.

On October 23, 2009, while Cuff was at work, Godfrey went with the boys to their school, El Capitan High School.  The boys met with school counselor Susan Saunders, outside of Godfrey's presence, and reported to Saunders that they were being verbally and physically abused by Cuff.[2]

In her role as a school counselor, Saunders is a "mandated reporter" as defined by section 11165.7, subdivision (a), which means that she is required to report suspected child abuse or neglect to certain statutorily identified authorities.  Based on what the boys told Saunders, she prepared a "Suspected Child Abuse Report" (SCAR), which she faxed

---

2    El Capitan High School is within the Grossmont Union High School District, and Saunders is an employee of defendant Grossmont.

3

to Child Welfare Services (CWS) that day. Saunders also made a telephone call to CWS at approximately 10:00 a.m. that day to register the report. CWS instructed Saunders to contact a law enforcement officer who could take the boys into protective custody.

Saunders contacted John Turtzer, a "resource officer" at the high school. Turtzer apparently declined to take the children into custody, and instead, assisted Saunders in contacting other governmental agencies for directions as to how to proceed with respect to the boys. According to Saunders, someone suggested that she give a copy of the SCAR to Godfrey and allow Godfrey to take the boys to the sheriff's department with the SCAR that Saunders had prepared.[3]

Saunders made a copy of the SCAR and gave it to Godfrey. She told Godfrey that he should take the SCAR to a law enforcement agency so that authorities could take the boys into custody.

Instead of taking the boys to a law enforcement agency, Godfrey took them to the East County courthouse where he intended to file for a protective order against Cuff and seek custody of the boys. Godfrey completed an "Application for Order and Supporting Declaration" in which he referred to the SCAR. However, by the time Godfrey completed the application, the court was closed. The following Tuesday, October 27,

---

[3] It is unclear who suggested that Saunders give the SCAR to Godfrey, and the parties dispute whom it was. Saunders asserts that it was either someone at CWS or at the sheriff's department who told her to give the report to Godfrey. Cuff contends that it was Officer Turtzer who did so. Resolution of this dispute is not necessary to our determination of the issues in this case.

2009, Godfrey filed the application and declaration with the court, and included the SCAR as an exhibit.

After a hearing, the trial court ordered that Cuff would retain sole legal and physical custody of the boys.

B.    *Procedural background*

Cuff filed a Government Tort Claim against Saunders and Grossmont on April 19, 2010.[4]  That claim was rejected on April 20, 2010.

On January 13, 2011, Cuff filed a first amended complaint against Saunders and Grossmont, alleging invasion of privacy based on a violation of section 11166 et seq. The defendants answered.

On December 2, 2011, the defendants filed a motion for summary judgment.  On December 19, 2011, Cuff filed a document titled "Memorandum of Points and Authorities in Support of Opposition to, and Counter-Motion for, Summary Judgment, or, in the Alternative, Motion for Summary Adjudication."  The defendants' motion for summary judgment was set for a hearing on February 17, 2012.  On February 15, 2012, the trial court issued a tentative ruling in which it addressed the defendants' evidentiary objections and granted the defendants' motion for summary judgment.  The trial court also stated that Cuff's motion for summary judgment "is not ruled on as it is untimely."

At the hearing on February 17, the trial court affirmed that it would not consider Cuff's motion for summary judgment because the motion was untimely.  The court took

---

4    The claim is not in the record on appeal.

5

the defendants' motion for summary judgment under submission. After receiving supplemental briefing regarding new authority that Cuff had raised at the hearing, the trial court issued its final order granting the defendants' motion for summary judgment. The court based its ruling on its conclusion that "[t]he District and Ms. Saunders are immune from liability for releasing the [SCAR] to James Godfrey."

The trial court entered judgment in favor of the defendants on May 25, 2012. Cuff filed a timely notice of appeal.

### III.

### DISCUSSION

On appeal, Cuff makes two arguments. She first contends that the trial court erred in granting summary judgment in favor of Saunders and Grossmont. According to Cuff, the trial court erred in determining that the defendants are immune from liability. Cuff next contends that the trial court erred in rejecting her motion for summary judgment as untimely. We conclude that the trial court erred in determining that the defendants are immune from liability. With respect to Cuff's motion for summary judgment, we conclude that the trial court properly determined that the motion was untimely.

6

A.      *The defendants' motion for summary judgment*

1.      *Legal Standards*

A moving party is entitled to summary judgment when the party establishes that it is entitled to the entry of judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A defendant may make this showing by demonstrating that the plaintiff cannot establish one or more elements of all of his causes of action or that the defendant has a complete defense to each cause of action.  (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

In reviewing a trial court's ruling on a motion for summary judgment, the reviewing court makes " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.  [Citations.]' "  (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143.)

2.      *Defendants cannot establish that they have immunity for Saunders's conduct*

California public entities are not subject to common law tort liability.  Rather, any liability must be pursuant to statute.  (Gov. Code, § 815; see also *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897.)  With respect to Cuff's claim, Grossmont could be liable in one of two ways: (1) Grossmont could be directly liable for breach of a

7

mandatory duty, pursuant to Government Code section 815.6;[5] or (2) Grossmont could be derivatively liable for the negligent acts or omissions of its employee, pursuant to Government Code § 815.2.[6] As long as either of these statutory bases for liability is not foreclosed, summary judgment in favor of Grossmont would be inappropriate.

Saunders's liability for her allegedly tortious conduct is actionable to the same extent as it would be if she were not a public employee, with certain statutory exceptions: "Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person." (Gov. Code, § 820, subd. (a).) However, Government Code section 820.2 provides an exception to a public employee's liability for the employees' discretionary acts and omissions: "Except as otherwise provided by statute, a public employee is not liable for

---

[5]     Government Code section 815.6 provides:

> "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

[6]     Government Code section 815.2 provides:

> "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

> "(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."[7]

> a.    *The undisputed facts do not establish that Saunders is immune from liability for her conduct in providing a copy of the SCAR to Godfrey*
>
> i.    *CANRA immunity*

The defendants contend that Saunders is immune from liability under the provisions of CANRA (§ 11164 et seq.).  CANRA was enacted to protect children from abuse and neglect, and requires certain persons, called "mandated reporters," to report known or reasonably suspected child abuse or neglect.  (§§ 11164, 11166.)  CANRA's definition of a "mandated reporter" includes a teacher, a classified employee of a public school, an "administrative officer or supervisor of child welfare and attendance, or a certificated pupil personnel employee of a public or private school," an "administrator or employee of a public or private organization whose duties require direct contact [with] and supervision of children," and an employee of a school district police or security department.  (§ 11165.7, subd. (a).)

It is undisputed that Saunders is a "mandated reporter."  (See § 11165.7, subd. (a)(4) [a "mandated reporter" includes a "classified employee of a public school"].)  Because the question whether Sanders qualifies for immunity in this case involves an examination of her conduct in the context of the requirements of CANRA, we provide an overview of the relevant statutory framework.

---

7    Government Code section 820.2 is one of the provisions on which Saunders and Grossmont rely in asserting immunity.  We discuss this provision and its application to this case more fully in part III.A.2.a.iii., *post*.

Section 11166, subdivision (a) requires that a "mandated reporter" report known or suspected abuse or neglect to one of a number of statutorily-identified agencies:

"Except as provided in subdivision (d), and in Section 11166.05, a mandated reporter *shall make a report to an agency specified in Section 11165.9* whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect. The mandated reporter shall make an initial report by telephone to the agency immediately or as soon as is practicably possible, and shall prepare and send, fax, or electronically transmit a written followup report within 36 hours of receiving the information concerning the incident. The mandated reporter may include with the report any nonprivileged documentary evidence the mandated reporter possesses relating to the incident." (Italics added.)

Section 11165.9, in turn, identifies the agencies to which a mandated reporter may make the required report:

"Reports of suspected child abuse or neglect shall be made by mandated reporters, or in the case of reports pursuant to Section 11166.05,[8] may be made, to any police department or sheriff's department, not including a school district police or security department, county probation department, if designated by the county to receive mandated reports, or the county welfare department."

Section 11167.5, subdivision (a) provides that reports of known or suspected child abuse "*shall be confidential* and may be disclosed *only* as provided in subdivision (b)."

---

8       Section 11166.05 authorizes a mandatory reporter to make a discretionary—as opposed to mandatory—report to one of the specified agencies when that reporter "has knowledge of or . . . reasonably suspects that a child is suffering serious emotional damage or is at a substantial risk of suffering serious emotional damage, evidenced by states of being or behavior, including, but not limited to, severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others . . . ." This permissive reporting provision is not at issue in this case.

10

(Italics added.) Subdivision (b) of section 11167.5 presents an exhaustive list of the agencies and individuals to whom a report of known or suspected child abuse may be disclosed. Notably, section 11167.5 provides a criminal penalty for any violation of the confidentiality required by that section: "Any violation of the confidentiality provided by this article is a misdemeanor punishable by imprisonment in a county jail not to exceed six months, by a fine of five hundred dollars ($500), or by both that imprisonment and fine." (§ 11167.5, subd. (a).)

Saunders and Grossmont rely on section 11172, subdivision (a) as the basis for their claim of immunity for Saunders's conduct in disclosing the SCAR to Godfrey. That provision states, in relevant part:

> "No mandated reporter shall be civilly or criminally liable for any report required or authorized by this article, and this immunity shall apply even if the mandated reporter acquired the knowledge or reasonable suspicion of child abuse or neglect outside of his or her professional capacity or outside the scope of his or her employment." (*Ibid*.)

This statute provides limited immunity to a mandatory reporter for the act of making the actual report of known or suspected child abuse. In other words, a mandated reporter may not be sued for making a *required* or *authorized* report to an authorized agency. However, this provision clearly *does not* immunize a mandatory reporter's conduct that does not comply with the strict confidentiality provisions of the statute.

We reject defendants' interpretation of section 11172, subdivision (a) as being so broad as to immunize Saunders for disclosing the SCAR *in violation of section 11167.5*.

11

Interpreting section 11172, subdivision (a) as immunizing Saunders's act of providing a copy of her report to a person who is not an authorized recipient under section 11165.9 would render the express criminal penalty provision provided for in section 11167.5 ineffective as to mandated reporters. It is a fundamental rule of statutory construction that a court will not adopt a construction of one provision of law that would render another provision of law ineffective or superfluous. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 459.)

> b. *The Education Code does not provide immunity for Saunders's conduct*

The defendants also contend that Saunders is immune from liability for her conduct in providing a copy of the SCAR to Godfrey pursuant to a provision of the Education Code that permits the release of student records in an emergency situation.

Subdivision (a) of Education Code section 49076 limits public access to "pupil records" generally: "A school district shall not permit access to pupil records to a person without written parental consent or under judicial order except as set forth in this section and as permitted by Part 99 (commencing with Section 99.1) of Title 34 of the Code of Federal Regulations." Subdivision (a)(2)(A) of that same section permits the "release [of] information from pupil records" to "[a]ppropriate persons in connection with an emergency if the knowledge of the information is necessary to protect the health or safety of a pupil or other persons." (Ed. Code, § 49076, subd. (a)(2)(A).)

The Education Code defines a pupil record as the following:

> " 'Pupil record' means any item of information directly related to an identifiable pupil, other than directory information, that is

12

maintained by a school district or required to be maintained by an employee in the performance of his or her duties whether recorded by handwriting, print, tapes, film, microfilm, or other means.

" 'Pupil record' does not include informal notes related to a pupil compiled by a school officer or employee that remain in the sole possession of the maker and are not accessible or revealed to any other person except a substitute.  For purposes of this subdivision, "substitute" means a person who performs the duties of the individual who made the notes on a temporary basis, and does not refer to a person who permanently succeeds the maker of the notes in his or her position."  (Ed. Code, § 49061, subd. (b).)

Saunders and Grossmont maintain that the SCAR that Saunders created is a "pupil record."  Specifically, they assert, without citation to any authority, that once a SCAR is generated by a school district or its employee, "it becomes part of the educational record of that student."  The defendants claim that "a school district can obtain and maintain a copy of the SCAR report because both mandated reporters and investigating agencies have the authority to maintain the child abuse reports," and they  maintain that section 11167.5, subdivision (b)(5) supports this contention.  However, that subdivision provides that among the limited individuals and agencies to whom a SCAR may be disclosed are "[p]ersons or agencies responsible for the licensing of facilities which care for children, as specified in Section 11165.7."  (§ 11167.5, subd. (b)(5).)  Although the statute references section 11165.7, that provision does not appear to be directly applicable to the substance of section 11167.5, subdivision (b)(5).[9]  In any event, the fact that SCARs may

---

[9]     Section 11165.7 identifies those individuals who are considered "mandated reporters" under CANRA.  However, a different provision, section 11165.11, describes what CANRA refers to when it uses the term "licensing agency":  "As used in this article, 'licensing agency' means the State Department of Social Services office responsible for

be disclosed to "[p]ersons or agencies responsible for the licensing of facilities which care for children" (*ibid.*) does not suggest that a school district or its employees may "obtain and maintain a copy of the SCAR report" as a pupil record.

Further, given the extreme confidentiality that SCARs are accorded under section 11167.5, and given the fact that their disclosure outside the limits provided in that section is subject to criminal sanctions, in the absence of some direct statutory authority providing that a SCAR is a "pupil record," we conclude that SCARs are not "pupil records" as that term is defined in the Education Code. If a SCAR were deemed to be a pupil record, this would allow access to the SCAR by persons who are *not* identified in section 11167.5 as among those to whom disclosure of a SCAR is permitted.[10] Any disclosure of a SCAR to persons or entities not identified in section 11167.5 would be a violation of that provision. Thus, to interpret the Education Code as including a SCAR as a "pupil record" would undermine the specific confidentiality provisions of CANRA. We decline to interpret the Education Code in this manner. We conclude that Saunders's release of a copy of the SCAR to Godfrey, allegedly in response to an "emergency," is

the licensing and enforcement of the California Community Care Facilities Act (Chapter 3 (commencing with Section 1500) of Division 2 of the Health and Safety Code), the California Child Day Care Act (Chapter 3.4 (commencing with Section 1596.70) of Division 2 of the Health and Safety Code), and Chapter 3.5 (commencing with Section 1596.90) of Division 2 of the Health and Safety Code), or the county licensing agency which has contracted with the state for performance of those duties." It appears that this may be the section to which section 11167.5, subdivision (b)(5) was intended to refer.

[10] For example, section 11167.5 does not identify school administrators or teachers as those to whom a confidential SCAR may be disclosed.

not immunized pursuant to the Education Code provision that authorizes the release of certain information from "pupil records" in an emergency situation.

### c. *Saunders is not entitled to discretionary immunity under Government Code section 820.2*

The defendants contend that Saunders is entitled to immunity pursuant to Government Code section 820.2, which provides:  "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

"Government Code section 820.2 'confers immunity only with respect to those "basic policy decisions" which have been committed to coordinate branches of government, and does not immunize government entities from liability for subsequent ministerial actions taken in the implementation of those basic policy decisions [citation].' "  (*Customer Co. v. City of Sacramento* (1995) 10 Cal.4th 368, 392.)  " ' "This distinction is sometimes characterized as that between the 'planning' and the 'operational' levels of decision-making [citation]."  [Citation.]' "  (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 434; see also *Barner v. Leeds* (2000) 24 Cal.4th 676, 685 (*Barner*) ["In determining whether an act of a public employee is discretionary under section 820.2, we have distinguished between the employee's operational and policy decisions"].)

The Supreme Court has explained that "not all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section

15

820.2." (*Barner*, *supra*, 24 Cal.4th at pp. 684-685.)  Rather, immunity is reserved for policy decisions because " '[s]uch "areas of quasi-legislative policy-making . . . are sufficiently sensitive" [citation] to call for judicial abstention from interference that "might even in the first instance affect the coordinate body's decision-making process" [citation].' " (*Id*. at p. 685.)  "On the other hand, there is no basis for immunizing lower level decisions that merely implement a basic policy already formulated."  (*Ibid*.)  Further, the court has cautioned that "[t]he scope of the discretionary act immunity 'should be no greater than is required to give legislative and executive policymakers sufficient breathing space in which to perform their vital policymaking functions.' " (*Ibid*.)

As we explained in part III.A.2.a, *ante*, under CANRA, a mandatory reporter such as Saunders does not have the discretion to disclose the SCAR to anyone other than those entities identified in section 11167.5, subdivision (b).  Rather, CANRA strictly limits to whom the mandatory reporter may provide the SCAR and expressly prohibits a mandatory reporter from disclosing a SCAR to someone such as Godfrey, who is not one of the individuals or entities identified in section 11167.5.  Saunders's conduct in giving a copy of it to Godfrey is precisely the kind of "lower level decision[]" that constitutes the implementation of "a basic policy" that had "already [been] formulated" (*Barner*, *supra*, 24 Cal.4th at p. 685), as opposed to the creation of the policy itself.  For this reason, Government Code section 820.2 does not immunize Saunders for her conduct in disclosing the SCAR to Godfrey.

3. *We need not consider Grossmont's argument as to Government Code section 815.6*

In the alternative, Grossmont contends that the trial court correctly determined that it was entitled to judgment as a matter of law with respect to Cuff's complaint because Cuff cannot establish Grossmont's liability under Government Code section 815.6. That statute provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (*Ibid.*) Grossmont maintains that Cuff cannot show that the injury she suffered is one of the consequences that the Legislature sought to prevent through the imposition of a mandatory duty.

We need not consider this argument as a ground for affirming the trial court's grant of summary judgment in favor of Grossmont, however, because it is clear that Grossmont may be vicariously liable to the extent that Saunders is liable, pursuant to Government Code section 815.2. Because we have concluded that Saunders is not immune from liability for her conduct, and, therefore, that summary judgment in her favor was improper, we must also conclude that Grossmont may be vicariously liable for Saunders's conduct, and thus, that summary judgment was improvidently granted in its favor, as well.

We therefore reverse the judgment entered in favor of Saunders and Grossmont.

17

B.      *Cuff's motion for summary judgment was untimely*

Cuff attempted to file a document purporting to be both an opposition to the defendants' motion for summary judgment as well as her own affirmative motion for summary judgment and/or summary adjudication. The trial court considered that portion of the document constituting an opposition to the defendants' motion for summary judgment, but declined to rule on Cuff's affirmative motion for summary judgment and/or summary adjudication.

Code of Civil Procedure section 473c, subdivision (a) provides that a party moving for summary judgment or summary adjudication "shall" serve notice of the motion and supporting papers "on all other parties to the action *at least 75 days* before the time appointed for hearing." (*Ibid*., italics added.) This language is mandatory and the court has no discretion to shorten the time:

> "As the statutory language indicates, a trial court has discretion to shorten the initial 60-day period to bring a motion for summary judgment on a showing of good cause. Similarly, a trial court has discretion to shorten the 30-day period in which a motion for summary judgment must be heard before trial where circumstances warrant. However, *the Legislature did not similarly authorize a trial court to shorten the minimum notice period for hearings on summary judgment motions*. Such discretionary language is notably absent from the statute. Moreover, the statutory language regarding minimum notice is mandatory, not directive." (*Urshan v. Musicians' Credit Union* (2004) 120 Cal.App.4th 758, 764.)

Cuff filed a hybrid document in which she attempted to set forth both her opposition to the defendants' motion for summary judgment and her own motion for summary judgment. Conceptually and practically, however, these are two separate

18

pleadings.  One, an opposition, is defensive; the other, an affirmative motion, is offensive.

Cuff apparently assumes that an opposition to the other party's motion for summary judgment and one's own motion for summary judgment operate in the same way.  Cuff is under the misimpression that in an "original motion for summary judgment" a party "asks for the court to grant relief and" in "the opposition papers" the opposing party "ask[s] for the opposite relief."   However, this is not an accurate description of what a party seeks in opposing a motion for summary judgment.  A party opposing a motion for summary judgment is *not* seeking affirmative relief; rather, he or she is simply seeking to prevent the other party from obtaining a judgment in his or her favor, which is the affirmative relief sought in the motion for summary judgment.  In order to seek "the opposite relief," i.e., a judgment entered in one's own favor, a party must make its *own affirmative motion for summary judgment*, and cannot simply rely on its opposition to the opposing party's motion for summary judgment.[11]

A party's opposition to a motion for summary judgment is to be filed "not less than 14 days preceding the noticed or continued date of hearing, unless the court for good cause orders otherwise."  (Code Civ. Proc., § 437c, subd. (b)(2).)  However, a party's own motion for summary judgment must be filed at least 75 days before the time appointed

---

[11]     Contrary to Cuff's assumption, it is clear that a party could succeed in convincing a court that the other party is not entitled to summary judgment, but at the same time fail to convince the trial court that summary judgment in his or her favor is appropriate.  In such an instance, the trial court will have concluded that neither party is entitled to judgment as a matter of law because there remain material issues of fact in dispute and a trial on those factual issues is appropriate.

for hearing.  (Code Civ. Proc., § 437c, subd. (a).)  The portion of Cuff's pleading that constituted her affirmative motion for summary judgment, which was *not filed at least 75 days prior to the hearing date*, was untimely under the relevant statute, and the trial court properly disregarded it as untimely.

## IV.

## DISPOSITION

The judgment is reversed.  The trial court's order declining to rule on Cuff's motion for summary judgment is affirmed.  The parties are to bear their own costs on appeal.

_____

AARON, J.

WE CONCUR:


_____

McCONNELL, P. J.


_____

O'ROURKE, J.

20