[No. C052039. Third Dist. Jan. 31, 2007.]

JOY R. JONES, Plaintiff and Appellant, v.
CATHOLIC HEALTHCARE WEST et al., Defendants and Respondents.

## COUNSEL

Jay-Allen Eisen, C. Athena Roussos; Law Offices of Kenneth N. Meleyco and Kenneth N. Meleyco for Plaintiff and Appellant.

Low McKinley Baleria, Donna W. Low, Joseph M. Weber and Paul R. Baleria for Defendants and Respondents.

## OPINION

CANTIL-SAKAUYE, J.—Plaintiff Joy R. Jones sued defendants Catholic Healthcare West and St. Joseph's Medical Center (St. Joseph's) for personal injuries she suffered while hospitalized in May 2002. Defendants moved for summary judgment on grounds Jones's action was barred by the statute of limitations set forth in Code of Civil Procedure section 340.5,[1] and the purported notice of intent to sue which Jones faxed to St. Joseph's president on February 2, 2004, did not extend the time within which to file an action against defendants. The court granted summary judgment and Jones appeals.

Jones argues her complaint was timely as a matter of law because: (1) the parties entered into a series of tolling agreements that extended the one-year statute of limitations under section 340.5 through January 31, 2004; and (2) her February 2, 2004, letter of intent to sue effectively tolled the statute of limitations for 90 days based on the plain language of section 364. Jones does not challenge the portion of the court's ruling that there were triable issues of fact whether an earlier letter constituted a notice of intent to sue, as argued by defendants. However, she emphasizes the correctness of that ruling as a backup argument. We conclude the trial court misconstrued section 364 and erred in granting defendants' motion for summary judgment.

---

[1] Hereafter, undesignated statutory references are to the Code of Civil Procedure.

Section 340.5 reads in relevant part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. . . ."

## FACTUAL AND PROCEDURAL BACKGROUND

On May 20, 2002, Jones underwent total hip replacement surgery at St. Joseph's. While hospitalized following surgery, Jones fell in her hospital room on May 21, 2002, and suffered injuries to her jaw and teeth. Her complaint alleges the fall was caused by the nursing staff's negligence.

On May 6, 2003, Jones sent a letter to Don Wiley, the president of St. Joseph's Medical Center, describing the circumstances surrounding the fall and asking the hospital to "assume financial responsibility for the injuries that occurred . . . ." She also asked Wiley to contact her attorney within 10 days in order to "decide on an appropriate course of action." Jones attached four pages of answers to form interrogatories, which detailed her injuries and medical treatment to date.

On May 20, 2003, Jones's attorney, Donald West, transmitted a tolling agreement to Wiley for his signature. The agreement extended beyond the one-year limitations period the time within which to serve notice of intent to sue under the Medical Injury Compensation Reform Act (MICRA) to August 21, 2003, to give the parties "time to try to resolve by settlement any disputes between them . . . ." The tolling agreement referenced the personal injuries suffered by Jones as a result of her fall on May 21, 2002. Wiley signed the tolling agreement.

On August 6, 2003, West faxed Wiley 14 pages of Jones's medical records and asked for a 60-day extension of the tolling agreement in order to obtain the rest of Jones's records.

West sent Wiley a second tolling agreement by fax and mail on August 20, 2003, which extended the time within which to serve a notice of intent to sue under MICRA to October 21, 2003. Wiley signed the agreement.

West corresponded with Wiley again on October 20, 2003, and asked him to sign a third tolling agreement extending the time within which to serve a notice of intent to sue to January 31, 2004. Wiley signed the agreement as requested.

On January 26, 2004, West faxed Wiley a fourth tolling agreement, which Wiley did not sign. That agreement would have extended the filing date to April 30, 2004.

On February 2, 2004, West faxed Wiley a letter which read in part: "This letter shall serve as notice, in accordance with Section 364 of the Code of Civil Procedure, that Joy Jones will file suit against you for damages resulting from her personal injuries of May 21, 2002. The legal basis for this action will be the negligent failure to properly hire, train, and supervise nursing staff that resulted in negligent post-operative supervision and care of Ms. Jones causing her fall and injuries. [¶] Joy Jones will allege and prove losses and injuries, as a proximate result of the aforementioned professional negligence, regarding her jaw fracture, TMJ, and dental injuries, detailed in the medical records already provided to you." Defendants do not dispute Wiley received actual notice of Jones's claim via fax on February 2, 2004.

Jones filed her complaint on April 28, 2004. Defendants' answer raised the statute of limitations as an affirmative defense.

Defendants asserted in their motion for summary judgment that: (1) Jones provided notice under section 364 on May 6, 2003, rendering the subsequent notice a nullity; and (2) her "ostensible" notice faxed on February 2, 2004, did not comply with the requirements of sections 364 and 1013, subdivision (e), and California Rules of Court, rule 2008. They argued Jones's complaint was barred by section 340.5 because it was filed "well after the expiration of the last tolling agreement between the parties."

Jones disputed defendants' claim the May 6, 2003 letter was a notice of intent to sue, arguing there was nothing in the record to show it was intended for that purpose. With respect to the February 2, 2004 letter, Jones maintained section 364 did not require compliance with section 1013, subdivision (e) and allowed service of notice of intent to sue by other means. Jones also argued that defendants had waived or were equitably estopped from complaining about the manner of service because the parties had established a course of conduct in which service by fax was used and accepted by defendants.

The court granted summary judgment. It rejected defendants' argument the May 6, 2003 letter constituted notice of intent to sue as a matter of law, finding, at minimum, there was a triable issue of fact regarding: "1) whether

the notice was intended to be the § 364 notice, and 2) whether defendant should be estopped from asserting this contention due to its signing of the tolling agreements." However, as to the February 2, 2004, letter the court found that "[s]ince plaintiff failed to comply with the provisions of CCP §§ 1010, et seq., the notice did not act to toll the statute of limitations." It specifically found Jones failed to demonstrate "there was, in fact, a course of conduct by which the parties were communicating by fax." The court denied Jones's ex parte motion for reconsideration as untimely.

## DISCUSSION

### I

### *Standard of Review*

"[S]ummary judgment is granted if all the submitted papers show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (§ 437c, subd. (c).) A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established. (§ 437c, subd. [(p)](2); [citation].) Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. [Citation.] In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. [Citation.] We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. [Citation.]" (*Hanooka v. Pivko* (1994) 22 Cal.App.4th 1553, 1558 [28 Cal.Rptr.2d 70] (*Hanooka*).) "We also conduct de novo review of the trial court's resolution of the underlying issues of statutory construction. [Citation.]" (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].)

### II

### *Notice of Intent To Sue Under Section 364*

A. *The Relevant Statutes:*

Section 364 requires that a plaintiff give a health care provider 90 days' prior notice before commencing an action for professional negligence.

The question whether Jones's complaint was timely when filed on April 28, 2004, turns on the validity and effectiveness of the notice of intent to sue faxed by attorney West to Wiley on February 2, 2004.

Section 364 reads in relevant part:

"(a) No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action.

"(b) No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered.

"(c) The notice may be served in the manner prescribed in Chapter 5 (commencing with Section 1010) of Title 14 of Part 2.

"(d) If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice. . . ."

Section 364, subdivision (c) refers to the chapter of the Code of Civil Procedure pertaining to notices, filing and service of papers. (§ 1010 et seq.) Defendants claimed and the court agreed that Jones was subject to the requirements for service by facsimile transmission set forth in section 1013, subdivision (e), which reads in part: "Service by facsimile transmission shall be permitted only where the parties agree and a written confirmation of that agreement is made. . . ." (See also Cal. Rules of Court, former rule 2008(b), now rule 2.306.)

B. *The Letter Faxed on February 2, 2004:*

January 31, 2004, the deadline for serving a notice of intent to sue under the parties' third tolling agreement, was a Saturday. The following day, February 1, 2004, was a Sunday. Section 12a provides that "[i]f the last day for the performance of any act provided or required by law to be performed within a specified period of time is a holiday, then that period is hereby

extended to and including the next day which is not a holiday. . . ." Because Sunday was a holiday (§ 10), the period within which to serve the section 364 notice was extended to Monday, February 2, 2004. There is no dispute that Wiley received the fax on February 2, 2004, and it was timely under section 12a, subdivision (a). (See also *Tran v. Fountain Valley Community Hospital* (1997) 51 Cal.App.4th 1464, 1466–1467 [60 Cal.Rptr.2d 91].) The question is whether the fax transmission constituted effective service absent the written agreement to accept service by facsimile transmission required by section 1013, subdivision (e).

■ Jones argues, and we agree, the plain language of section 364, subdivision (c)—that "notice *may* be served in the manner prescribed in Chapter 5"—is permissive and does not require compliance with section 1013, subdivision (e). (Italics added.) ■ Courts routinely construe the word "may" as permissive and words like "shall" or "must" as mandatory. (See *Compton College Federation of Teachers v. Compton Community College Dist.* (1982) 132 Cal.App.3d 704, 711 [183 Cal.Rptr. 341] (*Compton Teachers*); *People v. Durbin* (1963) 218 Cal.App.2d 846, 849 [32 Cal.Rptr. 569]; see also Gov. Code, § 14 [" 'Shall' is mandatory and 'may' is permissive"].) " ' "While word 'may' is sometimes construed as equivalent to 'must' in statutory construction, such interpretation is proper only where sense of entire enactment requires it or it is necessary to carry out legislative intention." ' [Citations.]" (*Compton Teachers, supra,* at p. 712.) There is nothing in the language of the other provisions of section 364 to suggest the Legislature intended "may" to mean "must" in subdivision (c).[2] Indeed, the fact the Legislature used the mandatory "shall" and "shall not" in section 364, subdivisions (b), (d) and (e) demonstrates it knew the difference between the two terms. ■ " 'It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.' [Citations.]" (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725 [257 Cal.Rptr. 708, 771 P.2d 406].) If the Legislature had intended section 364, subdivision (c) to *require* service in accordance with section 1013, it would have used "shall" and not "may."

Our reading of section 364, subdivision (c) is reinforced by the language of section 364, subdivision (b) which states that, "no particular form of notice is required."

---

[2] We have reviewed the available legislative history of the enactment of section 364, subdivision (c), and it does not shed light on the issue.

Our conclusion is also supported by a comparison of the purposes of section 364 and sections 1010 and 1013. The purpose of section 364 and the 90-day waiting period set forth therein "is to decrease the number of medical malpractice actions filed by establishing a procedure that encourages the parties to negotiate 'outside the structure and atmosphere of the formal litigation process.' [Citations.]" (*Woods v. Young* (1991) 53 Cal.3d 315, 320 [279 Cal.Rptr. 613, 807 P.2d 455].) Negotiation is encouraged by the general absence of restrictions on how to effectuate service under section 364. Section 364, subdivisions (b) and (c) provide flexibility in the form of notice and manner of service. Section 364 does not require a proof of service. Given the language and purpose of section 364, we do not read section 364, subdivision (c) in a restrictive manner.

At the same time, the courts recognize that the purpose of effectuating prelitigation settlement can be achieved only if the health care provider receives *actual notice* under section 364. Thus, the test is whether plaintiff took adequate steps to achieve actual notice. (*Derderian v. Dietrick* (1997) 56 Cal.App.4th 892, 899 [65 Cal.Rptr.2d 800] [plaintiffs failed to take adequate steps to achieve actual notice where they mailed the section 364 notice to the wrong address]; *Hanooka, supra,* 22 Cal.App.4th at p. 1559 [plaintiffs failed to take adequate steps to achieve actual notice where they mailed the section 364 notice to the hospital where defendants had staff privileges], citing *Godwin v. City of Bellflower* (1992) 5 Cal.App.4th 1625, 1631 [7 Cal.Rptr.2d 524] [plaintiffs failed to take adequate steps to achieve actual notice where they mailed the section 364 notice to the hospital without naming the defendants whose names were known].) The key is that the health care provider receives notice and the opportunity to enter into settlement negotiations before a complaint is filed. Where the plaintiff does not utilize section 1013 to serve notice of intent to sue under section 364, the plaintiff must show the health care provider received actual notice.

■ The requirements of section 1010 et seq., however, must be read in a different context. Once a civil action is filed, the parties are subject to strict timelines for filing demurrers and motions. (See, e.g., § 430.40 [demurrer]; § 435, subd. (b) [motion to strike]; § 437c, subd. (a) [motion for summary judgment].) ■ Section 1013 sets forth the ground rules for determining when service of a document is completed when sent by mail, express mail and facsimile transmission. Service is presumed if the party serving the document satisfies the formal requirements of section 1013. (See, e.g., *Sharp v. Union Pacific R.R. Co.* (1992) 8 Cal.App.4th 357, 360 [9 Cal.Rptr.2d 925] [service of notice of appeal complete when deposited in the mail].)

In *Silver v. McNamee* (1999) 69 Cal.App.4th 269 [81 Cal.Rptr.2d 445], a case cited by defendants, plaintiff Silver elected to serve his section 364 notice of intent to sue "in the manner prescribed in" section 1013. (§ 364, subd. (c).) By strictly complying with the section 1013 requirements for service by mail, Silver was able to utilize the presumption of service in the face of McNamee's claim Silver's medical malpractice action was time-barred. (*Silver v. McNamee, supra,* at pp. 272–273.) Three days before the limitations period was set to expire, Silver mailed two notices of intent to sue to defendant McNamee at his Ohio residence. (*Id.* at p. 272.) McNamee claimed he never received actual notice of Silver's intent to sue and successfully moved for summary judgment. (*Id.* at pp. 272–273.) The Court of Appeal reversed, stating: "Concluding Silver's notices of intent to sue McNamee were effective immediately upon their deposit in the mail, we determine the superior court erred in construing section 1013, subdivision (a) as delaying the effective date of such notices by 10 days. Further, in light of evidence indicating Silver strictly complied with relevant statutes governing service by mail, we also determine the superior court erred in concluding subdivision (d) of section 364 could not apply to toll the statute of limitations unless and until McNamee had 'actual notice' of Silver's intent to sue." (*Silver v. McNamee, supra,* at p. 273.)

■ Here, although the facts may not establish a course of conduct for purposes of applying the doctrine of equitable estoppel, Attorney West could reasonably rely on his past experience that Wiley received documents transmitted to him by fax. Once West determined that Wiley would actually receive the notice of intent to sue if transmitted by fax, there was no need for West to comply with the section 1013, subdivision (e) requirement of an advance written agreement in order to trigger the presumption of service under section 1013. We therefore conclude as a matter of law that the February 2, 2004, notice of intent to sue extended the limitations period and Jones's complaint was timely when filed on April 28, 2004.

### C. *The Letter Mailed on May 6, 2003:*

Relying on *Bennett v. Shahhal* (1999) 75 Cal.App.4th 384 [89 Cal.Rptr.2d 272], defendants argued in their motion for summary judgment that Jones's May 6, 2003, letter to Wiley was a notice of intent to sue which rendered the February 2, 2004, notice ineffective. Because the record does not show as a matter of law that Jones intended the May 2003 letter to be a notice of intent to sue under section 364, we agree with the trial court that defendants were not entitled to summary judgment on that issue.

## DISPOSITION

The judgment is reversed. Jones is entitled to costs on appeal. (Cal. Rules of Court, rule 8.276.)

Sims, Acting P. J., and Davis, J., concurred.