Filed 8/25/16  P. v. Galarneau CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GABRIEL GALARNEAU,<br><br>    Defendant and Appellant. | F070171<br><br>(Super. Ct. No. DF011588A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Craig Phillips, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Gabriel Galarneau appeals from a judgment of conviction on one count of aggravated assault by a state prison inmate, with an enhancement for personal infliction of great bodily injury.  There were additional enhancement findings based on prior

convictions and incarcerations. The trial court imposed a total prison sentence of 21 years.

Galarneau's appeal involves forfeited claims of prosecutorial misconduct and instructional error, which he presents under the rubric of ineffective assistance of counsel. He further contends that the trial court abused its discretion by refusing to strike a prior conviction allegation for purposes of sentencing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying events took place in 2013 at the North Kern State Prison, where Galarneau was serving a 16-month sentence for a second degree burglary conviction. There was a four-week period of time during which Galarneau was housed with a cellmate named Frank Rocco. The two men did not get along, and Galarneau eventually attacked Rocco in his sleep. Rocco suffered injuries caused by multiple blows to the head.

The Kern County District Attorney charged Galarneau by information with one count of assault by an inmate upon the person of another by means likely to produce great bodily injury (Pen. Code, § 4501, subd. (b), all further statutory references are to the Penal Code). An enhancement allegation was included for personal infliction of great bodily injury (§ 12022.7, subd. (a)). It was further alleged that Galarneau had suffered a prior strike and serious felony conviction (§§ 667, subds. (a), (b)-(i), 1170.12, subds. (a)-(d)) and had served a prior prison term within the meaning of section 667.5, subdivision (b).

The matter went to trial in August 2014. The prosecution's case included a first-hand account by the victim, Rocco, and the corroborative testimony of two nurses and one correctional officer. The defense did not present any evidence.

Rocco explained that he was incarcerated at the age of 55 after pleading guilty to a charge of committing physical elder abuse against a victim who was over 70 years old. He had no other felony convictions, and was thus a first-time prisoner when he began

2.

serving his sentence in July 2013. Galarneau became his cellmate in August 2013, and Rocco quickly realized that they were incompatible. He did not like Galarneau's "angry, agitated, aggressive [and] confrontational" demeanor, and was particularly displeased by the man's penchant for racist commentary. Believing he had "seniority" as the earlier occupant of the cell, Rocco asked Galarneau to seek other living arrangements. The requests were not well received, and Galarneau threatened to use violence against Rocco if he continued to press the issue.

Galarneau made inquiries as to why Rocco was in prison, but Rocco told him the reasons were confidential. After being pestered about the subject, Rocco disclosed that he had committed an assault crime. Unsatisfied with those responses, Galarneau searched through Rocco's "paperwork" until he discovered the true nature of Rocco's conviction. He then shared what he had learned with other prisoners. This incident led to a heated exchange of words between the two cellmates, which ended with Rocco retiring to his bunk to take a nap. He awoke to Galarneau punching him in the face.

Rocco sustained approximately 20-30 punches to the face and head. He immediately reported his injuries to a correctional officer named Javier Serna. Upon seeing Rocco's physical condition, Officer Serna turned to Galarneau and asked, "Did you do this?" Galarneau replied, "Yes, I did that." Officer Serna testified to Galarneau's statement of admission at trial.

Two nurses who examined Rocco on the day of the incident testified that his face was bloodied, bruised, and swollen. He complained to them of dizziness and severe pain. Rocco testified that he continued to experience pain and headaches for months after the attack. He also described unresolved vision problems and impaired short-term memory, both of which he attributed to Galarneau's actions.

The jury deliberated for approximately two and a half hours before informing the trial court that it had reached a verdict on the charged offense but was divided on the enhancement allegation of great bodily injury. After further deliberations, the jury

3.

returned a guilty verdict with a true finding on the enhancement. A bifurcated bench trial was held to determine the prior strike and prior prison term allegations, which were also found to be true.

Galarneau made a request to have the prior strike allegation dismissed pursuant to section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). The request was denied. The trial court imposed a 21-year prison sentence based on the following calculations: the upper term of six years for aggravated assault by a state prison inmate, doubled to 12 years because of the prior strike, plus consecutive terms of three years for the great bodily injury enhancement, five years for the prior serious felony conviction, and one year for the prior prison term. A notice of appeal was filed on the day of sentencing.

## DISCUSSION

**Alleged Prosecutorial Misconduct**

Galarneau complains of purported misstatements about the evidence made during the prosecution's rebuttal. He argues the prosecutor essentially vouched for Rocco's credibility, which likely swayed the jury's decision on the great bodily injury enhancement. Anticipating a forfeiture argument, Galarneau further contends that his trial attorney rendered ineffective assistance by failing to object to the prosecutor's remarks.

Background

Defense counsel below attacked Rocco's credibility during closing argument, highlighting the fact that Rocco was serving time for an elder abuse offense that involved great bodily injury to a victim over the age of 70. The prosecution responded to those comments on rebuttal. No objections were made to any portion of the rebuttal argument.

The italicized statements in the following excerpts from the rebuttal are those which Galarneau now characterizes as prosecutorial misconduct: "What is Mr. Rocco getting out of this? He had to come in here and be subjected to cross-examination, tell a

bunch of strangers that he beat up somebody over 70 years old and caused an injury. You think he really wanted to do that? No. *He's not proud of what he did*. He was 55 years old when he got his first and only felony conviction. *He was otherwise a law-abiding citizen*. But he did that. [¶] *He got up here to tell you why because he just wants the guy who beat the crap out of him to be held responsible for it*." (Italics added.)

Analysis

Allegations of prosecutorial misconduct are analyzed under federal and state law standards. "A prosecutor's misconduct violates the Fourteenth Amendment to the federal Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct 'that does not render a criminal trial fundamentally unfair' violates California law 'only if it " 'involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' " (*People v. Harrison* (2005) 35 Cal.4th 208, 242.)

A prosecutor commits misconduct by misstating the evidence presented at trial. (*People v. Davis* (2005) 36 Cal.4th 510, 550.) However, prosecutors are given wide latitude to argue the law and facts of a case and to suggest reasonable inferences from the evidence. (*People v. Lucas* (1995) 12 Cal.4th 415, 473.) "Opposing counsel may not complain on appeal if the reasoning is faulty or the deductions are illogical because these are matters for the jury to determine." (*People v. Lewis* (1990) 50 Cal.3d 262, 283.)

Respondent raises the issue of forfeiture. "A defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety." (*People v. Thornton* (2007) 41 Cal.4th 391, 454.) Galarneau did not comply with these procedural requirements. Respondent's forfeiture argument is thus well taken.

"A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.  The appellate record, however, rarely shows that the failure to object was the result of counsel's incompetence…." (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)  To establish a claim of ineffective assistance of counsel, an appellant must show "(1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice." (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)

The prosecutor's statement that Rocco was "otherwise a law-abiding citizen" was based on the witness's testimony on direct examination.  Rocco said that he had no other felony convictions and had never spent time in jail or prison prior to committing the elder abuse offense.  One could reasonably infer that the lack of prior custodial confinement suggested there were no prior felony *or* misdemeanor convictions.  The prosecutor's statement therefore fell within the permissible scope of argument.

It was also permissible for the prosecutor to argue that Rocco's motivation for testifying was to ensure Galarneau would be "held responsible" for his actions.  Rocco had said, "I don't have an ax to grind.  I'm here testifying because I was assaulted in a cell, and that's why I'm here."  He answered "No" when asked if he was pursuing civil remedies against Galarneau, if he was "getting any money out of this," or if he stood to benefit in some other way by cooperating with the prosecution.

While there is no direct evidence for the argument that Rocco was "not proud of what he did," we are not persuaded that the prosecutor engaged in improper vouching, i.e., making statements that are "understood to refer to facts available solely to the government or to the prosecutor's personal knowledge or beliefs or the prestige of her office." (*People v. Mendoza* (2016) 62 Cal.4th 856, 907.)  It was a trivial remark, and one that cannot be construed as prejudicial misconduct under either the state or federal

6.

standard. The ineffective assistance of counsel claim fails because a competent defense attorney could have reasonably concluded that the statements at issue did not warrant an objection or admonition. (See *People v. Price* (1991) 1 Cal.4th 324, 387 ["Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile."]; *People v. Bradley* (2012) 208 Cal.App.4th 64, 90 ["Failure to raise a meritless objection is not ineffective assistance of counsel."].)

**Alleged Instructional Error**

Galarneau contends that the trial court erred by giving an inadequate response to a jury question. Respondent submits that the issue was forfeited by trial counsel's failure to object. We agree, and decline to consider appellant's claim on the merits.

<u>Background</u>

The jury initially struggled with the great bodily injury enhancement allegation. At one point it advised the trial court that its most recent vote was 7-4, with one abstention. The trial court instructed the jury to continue deliberating, and within 20 minutes received a note containing three questions: 1. "Do we need to reach a consensus on the enhancement?" 2. "Please explain great bodily injury?" and 3. "If we don't reach a consensus on the enhancement, is our verdict null?"

While discussing these inquiries with the parties, the trial court stated its intention to respond affirmatively to the first question and tell the jurors, "[I]f [you can,] do so." As to the third question, the answer would be "No." The trial court asked the attorneys, "Do you have a problem with any of those [responses]?" Defense counsel replied, "No problem, Your Honor." The jury received the trial court's responses, and returned its verdict approximately 45 minutes later. The jury was polled collectively as to its guilty verdict and the true finding on the enhancement, and all jurors responded affirmatively.

On appeal, Galarneau argues that the jury was likely misled about the requirement for a unanimous verdict because the word "consensus" can mean something less than unanimity, i.e., a "general acceptance" or a mere majority. Although the trial court's oral

7.

and written instructions had specified the need for a unanimous finding, Galarneau claims there was a judicial obligation to explicitly reiterate that point given the jury's use of the term "consensus" in its question. He assigns error to the trial court's failure to specify that "a mere consensus was not enough" and provide further instruction on the need for unanimity.

Forfeiture

The failure to object to a trial court's proposed handling of a jury question forfeits any claim of error and may be regarded as showing "tacit approval of the trial court's decision." (*People v. Boyette* (2002) 29 Cal.4th 381, 430; accord, *People v. Martinez* (2003) 31 Cal.4th 673, 698.) Forfeiture also occurs where, as here, the parties consent to the trial court's response to a jury question. (*People v. Rogers* (2006) 39 Cal.4th 826, 877; *People v. Loza* (2012) 207 Cal.App.4th 332, 350; *People v. Bohana* (2000) 84 Cal.App.4th 360, 373.) Relying on section 1259, Galarneau argues that his claim is reviewable if the alleged error affected his substantial rights. Section 1259 is a permissive statute that gives appellate courts discretion to address an alleged instructional error despite the absence of an objection.[1] Insofar as section 1259 may be applicable to this claim, we decline to exercise our discretion to consider it.

---

[1] Section 1259 provides: "Upon an appeal taken by the defendant, the appellate court *may*, without exception having been taken in the trial court, review any question of law involved in any ruling, order, instruction, or thing whatsoever said or done at the trial or prior to or after judgment, which thing was said or done after objection made in and considered by the lower court, and which affected the substantial rights of the defendant. The appellate court *may* also review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (Italics added.) Use of the word "may" in statutory language typically connotes discretionary or permissive authorization. (*In re Richard E.* (1978) 21 Cal.3d 349, 354 ["The ordinary import of 'may' is a grant of discretion."]; *Jones v. Catholic Healthcare West* (2007) 147 Cal.App.4th 300, 307 ["Courts routinely construe the word 'may' as permissive"].)

As a fallback position, Galarneau argues for the first time in his reply brief that his trial attorney's failure to object amounted to ineffective assistance of counsel. This belated claim will also not be considered. (*People v. Tully* (2012) 54 Cal.4th 952, 1075 ["It is axiomatic that arguments made for the first time in a reply brief will not be entertained"].) "It is rarely appropriate to resolve an ineffective assistance claim on direct appeal [citations]; we certainly will not do so where, as here, the claim is omitted from the opening brief and thus waived." (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.)

**Denial of the *Romero* Motion**

Section 1385 authorizes trial courts to strike prior felony conviction allegations in cases brought under the Three Strikes law if doing so will further the interests of justice. (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529-530.) A request for such relief is commonly known as a "*Romero* motion." (See *People v. Carmony* (2004) 33 Cal.4th 367, 379.) The granting or denial of a *Romero* motion is reviewed for abuse of discretion on appeal. (*Id*. at p. 376.)

Galarneau's *Romero* motion pertained to a 1991 conviction for assault with a deadly weapon in violation of former section 245, subdivision (a)(1). His arguments in support of the motion focused on the remoteness in time of the prior strike. The trial court denied the motion in light of Galarneau's "long and checkered history," which included criminal convictions in 1994, 1999, 2000, 2001, 2005, 2007, 2009, 2010, 2011, 2012, and 2013. The convictions were for crimes that included battery (§ 242), sexual battery (§ 243.4, subd. (a)), resisting a peace officer (§ 148, subd, (a)(1)), and burglary (§ 459). He also committed numerous parole violations between 2009 and 2011. On appeal, Galarneau again emphasizes the age of his earlier strike conviction and the fact that many of his past criminal offenses resulted only in jail time rather than imprisonment.

California's Three Strikes law was designed to restrict the discretion of trial courts when punishing recidivist offenders " 'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of one or more serious and/or violent felony offenses.' " (*People v. Sasser* (2015) 61 Cal.4th 1, 11, quoting § 667, subd. (b); *People v. Garcia* (1999) 20 Cal.4th 490, 501.)  When ruling on a *Romero* motion, a trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [spirit of the Three Strikes law], in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  Only when the defendant can be said to fall outside the spirit of the law will the granting of a *Romero* motion be considered "in furtherance of justice" within the meaning of section 1385. (*Ibid*.)  Our task on appeal is to determine whether the trial court's ruling fell " 'outside the bounds of reason' under the applicable law and the relevant facts." (*Id*. at p. 162.)

We are not moved by Galarneau's arguments concerning the amount of time that has passed since his strike conviction in 1991.  The Three Strikes law explicitly states that "[t]he length of time between the prior serious and/or violent felony conviction and the current felony conviction shall not affect the imposition of sentence." (§§ 667, subd. (c)(3); 1170.12, subd. (a)(3).).)  Furthermore, any potential relevance the remoteness of the prior strike could have had was outweighed by the number of convictions he suffered between 1994 and 2013.  (See *People v. Pearson* (2008) 165 Cal.App.4th 740, 749 [rejecting argument that prior strikes should have been dismissed because they were remote where the current offense was violent, defendant's criminal history spanned 25 years, and he had performed poorly on probation and parole]; *People v. Strong* (2001) 87 Cal.App.4th 328, 346 (*Strong*) [same]; *People v. Gaston*

(1999) 74 Cal.App.4th 310, 321 [remoteness of prior strikes "not significant" in view of the defendant's lengthy criminal history].)

In *Strong*, *supra*, the Third District was asked to decide whether a "career criminal" can be considered outside the spirit of the Three Strikes law so as to justify the dismissal of a prior strike at sentencing. (*Strong*, *supra*, 87 Cal.App.4th at p. 331.) The appellate court's answer was yes, in theory, but such instances will be rare because as a practical matter, "longer sentences for career criminals who commit at least one serious or violent felony certainly goes to the heart of the statute's purpose–or spirit." (*Id*. at p. 338.) The defendant in *Strong* had suffered only one prior strike conviction, but the trial court was found to have abused its discretion by dismissing the strike in light of the defendant's 22-year criminal history. (*Id*. at p. 331.) The case holds that habitual offenders should be deemed outside the spirit of the Three Strikes law "only in extraordinary circumstances." (*Id*. at p. 347.)

Galarneau has not demonstrated any extraordinary circumstances that would have justified the granting of his *Romero* motion. He was shown to be a recidivist offender with a history of violence. Under the controlling case law, the nature and circumstances of the present felony and appellant's background, character, and prospects did not permit a finding that he fell outside the spirit of the Three Strikes law. As such, the trial court did not abuse its discretion by refusing to dismiss the prior strike allegation for purposes of sentencing.

11.

## **DISPOSITION**

The judgment is affirmed.

_____
GOMES, Acting P.J.

WE CONCUR:


_____
KANE, J.


_____
DETJEN, J.

12.