Filed 1/23/19; pub. order 2/15/19 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AL MIJARES et al., | |
| Plaintiffs and Appellants, | G055439 |
| v. | (Super. Ct. No. 30-2016-00836897) |
| ORANGE COUNTY EMPLOYEES' RETIREMENT SYSTEM, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge. Affirmed.

Sheppard, Mullin, Richter & Hampton, Robert J. Guite, Sheldon M. Kline, and Robert J. Stumpt, Jr., for Plaintiffs and Appellants.

Reed Smith, Harvey L. Leiderman, Jeffrey R. Rieger, and May-tak Chin for Defendant and Respondent.

In this declaratory relief action, the trial court ruled the Orange County Department of Education (Employer) must pay approximately $3.3 million in additional contributions to fund pension benefits promised to its employees. Employer argues we must independently review the legal issues raised in its complaint because the judgment arises from an order granting a motion for judgment on the pleadings. Applying this standard, we nevertheless reach the same conclusion as the trial court. The requested payment from Employer, which related to an unfunded liability of its employees' pension benefits, was permissible and did not violate the California constitution.

FACTS

We begin by noting the parties' briefing in this appeal utilized an excessive amount of acronyms. For the sake of clarity, and to avoid our opinion looking like alphabet soup, we have not adopted the parties' acronyms and when appropriate selected descriptive abbreviations when referring to the parties, legal authority, and policies.

Approximately 40 years ago, Orange County employed all education-related employees, i.e., teachers and principals. These employees were all members of the Orange County Employee's Retirement System (County Retirement System). This is a public pension system and independent government entity, which administers a retirement system for Orange County's officers and employees. The Orange County Board of Supervisors (the Board) created the County Retirement System in 1945, pursuant to Government Code section 31450 et seq., also referred to as the County Employees Retirement Law of 1937 (Retirement Law).[1]

On July 1, 1977, the Board passed a resolution transferring "'duties and functions of an educational nature'" to Employer. Employer is a public education organization. Its chief executive officer administers the budget and pays the costs of

_____

[1] All further statutory references are to the Government Code.

2

employment, including retirement benefits. Currently, this job is held by Al Mijares, the Orange County Superintendent of Schools.

Along with the 1977 resolution, the Board entered into an agreement with Employer regarding the terms of transfer (Transfer Agreement). Pursuant to the Transfer Agreement, the Board gave educational employees the option of becoming a member of the California Public Employee's Retirement System (CalPERS) or remaining with the County Retirement System. The employees who selected CalPERS would never again be eligible to enroll in the County Retirement System. A small number of employees elected to remain members of the County Retirement System.

Employer was required to make yearly contributions to the County Retirement System. The parties agree the payment consists of two components described in section 31453.5, as follows: (1) the normal contribution rate, calculated each fiscal year to fund the employee's expected benefits attributed to that year; and (2) the Unfunded Actuarial Accrued Liability (the Unfunded Liability), which funds unexpected or unplanned benefits or costs. The County Retirement System set the contribution rates for each of its participating employers. For the normal contribution rate, it applied a "'percentage-of-payroll'" methodology.

Employer stopped making contributions in March 2013 after its last employee enrolled, in the County Retirement System, retired. Because Employer's contribution obligation was based on a percentage of the payroll attributable to employees who were members of the County Retirement System, the retirement of the last participating employee caused Employer to believe it was no longer required to make contributions. The County Retirement System did not immediately object when Employer stopped making payments.

Two years later, in 2015, the County Retirement System created the Declining Employer Payroll Policy (the 2015 Policy), after it determined Employer had not contributed enough to completely fund its employees' benefits. Employer's

3

complaint described how the policy came about. In March 2015, staff from the County Retirement System informed Employer it owed money due to the Unfunded Liability attributable to 22 retired members still receiving benefits. At a public hearing the following month, the County Retirement System's actuary discussed what options were available to collect the Unfunded Liability from Employer. The County Retirement System's chief executive officer, Steve Delaney, recommended that the board members create a policy "for employers who implicitly withdraw from [the County Retirement System] due to declining payroll." Delaney proposed the policy should "allocate [the Unfunded Liability] based on [a] pro-rate share of actuarial accrued liability," set payments in a fixed dollar amount "with a true-up process for future [Unfunded Liability]." The County Retirement System's board unanimously approved Delaney's proposed policy.

Employer claimed it tried to ask questions about how the Unfunded Liability was being calculated and was told the issue could be raised at the next County Retirement System's board meeting. At the June 2015 meeting, Employer asked if it could be granted additional time to research the policy further. The County Retirement System's board adopted the 2015 Policy but postponed taking action on the contribution schedule until a further meeting. Concerns about the 2015 Policy were discussed during a meeting held in October 2015, where Employer explained its theory the 2015 policy was unlawful. In December 2015, the County Retirement System asked Employer to "provide assurances that it would pay the $3.3 million" and make its first payment in July 2016.

Instead of providing assurances, Employer filed a lawsuit seeking declaratory relief that the 2015 Policy "create[d] an impermissible, unlawful retroactive effect and [was] therefore invalid." It sought an order enjoining the County Retirement System from enforcing its new 2015 Policy. The County Retirement System filed a cross-complaint also seeking declaratory relief. It asserted Employer was legally

4

required to make the requested contribution, and if it does not, the shortfall related to those employees "will be unfairly shifted" to other employers participating in the County Retirement System. The County Retirement System sought a judicial determination of the rights and obligations of the parties and a declaration Employer must start making its $28,314 monthly payments. The lawsuits were reassigned to a trial judge in Los Angeles County.

The County Retirement System filed a motion for judgment on the pleadings (JOP). Employer filed an opposition. The court granted the motion for JOP, determining the County Retirement System had acted within its authority when it created the 2015 Policy, and assessed the unfunded liability against Employer.

DISCUSSION

"Because a motion for [JOP] is similar to a general demurrer, the standard of review is the same. [Citation.] We treat the pleadings as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. When leave to amend is not given, we determine whether the complaint states a cause of action and whether the defect can reasonably be cured by amendment. If it can be cured, the trial court has committed reversible error. Otherwise, we affirm. The burden of proof is squarely on the plaintiff. [Citation.] The judgment of dismissal will be affirmed if it is proper on any grounds stated in the motion, whether or not the trial court relied on any of those grounds. [Citation.]" (*Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187.)

I. *Applicable Law*

To evaluate the parties' arguments it his helpful to provide some background information about the County Retirement System's authority and financial responsibilities. Public employees "have a contractual right to an actuarially sound retirement system." (*Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1137.) The County Retirement System's board "which has 'plenary authority and

fiduciary responsibility for . . . administration of the [retirement] system . . . [¶] [and] sole and exclusive responsibility to administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries,' also has 'the sole and exclusive power to provide for actuarial services in order to assure the competency of the assets of the public pension or retirement system.' (Cal. Const., art. XVI, § 17, subds. (a), (e).)" (*County of Orange v. Association of Orange County Deputy Sheriffs* (2011) 192 Cal.App.4th 21, 34 (*Orange*).)

"The [County Retirement System's] [b]oard is required to conduct regular actuarial evaluations to determine the employer and employee contributions necessary to fund the retirement benefits of county employees, and to 'determine the extent to which prior assumptions must be changed.' [Citation.]" (*Orange, supra,* 192 Cal.App.4th at p. 34, fn. omitted.) "Once a retirement board sets contribution rates based upon the recommendation of its actuary, those rates are binding on the county. (See §§ 31584-31586; see also *City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 49 ["contribution rates are set by law"].)" (*In re Retirement Cases* (2003) 110 Cal.App.4th 426, 453.)

The Retirement Law provides the County Retirement System "is funded by both County and employee-member contributions. (§§ 31580-31607, 31639-31639.85.)" (*County of Alameda v. Board of Retirement* (1988) 46 Cal.3d 902, 908 (*Alameda*).) The statutory scheme provides, "[T]here are two ways in which County 'pays into' the system. It does so by complying with the periodically readjusted rate of contribution (§§ 31453.5, 31454), and by funding any deficits in the system (§ 31454.5)." (*Id.* at p. 909.)

As mentioned, the rate of contribution has two components, described in section 31453.5 as the normal contribution rate and the Unfunded Liability. The normal contribution rate is calculated each year based on a percentage of Employer's payroll. An Unfunded Liability represents "'the difference between actuarial accrued liability and the valuation assets in a fund.' [Citation.] '"Most retirement systems have [Unfunded

6

Liability]. They arise each time new benefits are added and each time an actuarial loss is realized. [¶] . . . [Unfunded Liability] does not represent a debt that is payable today."' [Citation.]" (*Orange, supra,* 192 Cal.App.4th at p. 34.) The Unfunded Liability represents "'an estimate based on a series of assumptions that operate on demographic data of [the County Retirement System's] membership." (*Id.* at p. 35.) "Given the multiple assumptions about the future involved in calculating the [County Retirement System's Unfunded Liability] (investment returns, pay increases, marital status at retirement, retiree and beneficiary life expectancies, salary increases, contribution rates, and inflation), it is clear that the [Unfunded Liability] is a highly variable amount, which may or may not prove accurate depending upon actual future events and experience." (*Ibid.*)

## II. *Retroactivity*

The first reason Employer believes the 2015 Policy is unlawful is that it "retroactively increased [Employer's] liability from zero to $3.3 million." Employer maintains the County Retirement System's plenary authority does not give it the power to enact retroactive rules. Employer concludes it is an "impermissible retroactive policy." It reasons, "the triggering event that caused the [2015 Policy] to apply to [Employer] occurred 38 years before [the 2015 Policy] was adopted."

The trial court determined this argument lacked merit because Employer failed to explain what exactly was being applied retroactively. It recognized the County Retirement System's board assessed the Unfunded Liability two years after the last employee retired, but this fact would not make the assessment retroactive. We agree.

As described above, an employee's retirement date does not trigger a duty to calculate an Employer's Unfunded Liability obligation to 22 retired employees. Nor does the Employer's obligation to pay the $3.3 million Unfunded Liability originate from the events of 1977 (when some but not all county employees transferred to a different retirement system called CalPERS). Employer's retroactivity argument fails to

7

acknowledge an Unfunded Liability does not represent "'"a debt that is payable today." [Citation.]'" (*Orange, supra,* 192 Cal.App.4th at p. 34.) Rather, the obligation arises from predictions and future estimates about often-fluctuating factors over the years ("investment returns, pay increases, marital status at retirement, retiree and beneficiary life expectancies, salary increases, contribution rates, and inflation"). (*Orange, supra,* 192 Cal.App.4th at p. 35.) It is a "highly variable amount" and if the County Retirement System had experienced better than expected investment returns, the Unfunded Liability may have been avoided entirely. (*Id.* at pp. 35, 37.)

In this case, Employer has 22 retired employees who are members of the County Retirement System and currently collecting their retirement benefits. The calculated Unfunded Liability applies to *them prospectively* in these benefits. There is no dispute the County Retirement System has a responsibility to adjust and seek additional member contributions to provide retired employees their benefits without reduction. It performed its duty to conduct regular actuarial evaluations and determined there will be a funding shortfall with respect to those 22 retired employees. We find no merit with Employer's theory the County Retirement System's assessment for additional funds to pay 22 retired employees their promised benefits represents a retroactive liability.

On a final note, we will briefly address Employer's claim that the last sentence of section 31453, subdivision (a), expressly forbids any retroactive assessments. It states, "No adjustment shall be included in the new rates for time prior to the effective date of the revision." The phrase must be read in context and has no relevance to this appeal.

Section 31453 addresses several procedural issues relating to how and when the County Retirement System should use actuarial valuations in adjusting the contribution rates. The first part of the statute describes when valuation should take place. (§ 31453, subd. (a).) Next, it gives the County Retirement System's board 45 days before the "beginning of the succeeding fiscal year" to recommend to the board any

8

changes in the rates of interest, contributions, and appropriations. (*Ibid.*) The final two sentences of subdivision (a) of section 31453 discuss rules related to changing the rate of interest. It authorizes the County Retirement System's board to recommend "rates of interest to be credited" to an employer that is higher or lower than the rate established in the "actuarial survey." (*Ibid.*) However, any "adjustment" to the credited rates of interest must apply to the "new rates" being calculated for the next fiscal year. (*Ibid.*) The adjustment cannot include credits for time prior to the revision. This appeal does not concern the retroactive application of rates of interest to be credited Employer. This statute does not assist Employer with its argument.

III. *Authority to Request Contribution*

The second reason Employer believes the 2015 policy is unlawful is that the Retirement Law does not permit the County Retirement System to collect additional funds from an "inactive employer." Employer maintains there are only two statutory provisions that authorize the County Retirement System to seek additional contributions. The first relates to "ongoing employers" who have payroll relating to employees who are members of the County Retirement System. (§ 31453.5.) The second statute covers Employers who have "withdrawn" from the pension plan. (§ 31564.2.)

A. *No Official Withdrawal*

We begin by analyzing section 31564.2, subdivision (a), which grants the County Retirement System authority to assess unfunded actuarial liability from a withdrawn employer. Specifically, it provides, "If a district's participation in the retirement system is terminated pursuant to the provisions of [s]ection 31564, the district shall remain liable to the retirement system for the district's share of any unfunded actuarial liability of the system which is attributable to the officers and employees of the district who either have retired or will retire under the retirement system." The rest of the statute provides the formula used to calculate the unfunded actuarial liability and clarifies "[t]he funding of the retirement benefits for the employees of a withdrawing agency is

9

solely the responsibility of the withdrawing agency or the board of supervisors."
(§ 31564.2, subd (d).)

Section 31564 explains how employees may withdraw from the County Retirement System. "All officers and employees of any district who have become members . . . may be withdrawn by a resolution of the governing body declaring all of the district's employees withdrawn from the association; provided, the governing body has first received a written petition signed by a majority of its officers and employees requesting that the district's officers and employees be withdrawn from the association."

In the case before us, some of Employer's employees transferred their membership from the County Retirement System to CalPERS. This transfer came about due to the Board's 1977 resolution to transfer educational duties to Employer, not due to a section 31564.2 petition written by employees asking to withdraw from the County Retirement System. Transferring the employees' benefits was authorized by the terms of a Transfer Agreement made between the Board and Employer. Thus, in this case, the transfer to a different retirement system did not require any further action by the employees or Employer, i.e., a written withdrawn petition described in section 31564. We agree with Employer's assertion section 31564 and 31564.2 are not applicable.

Before continuing our analysis, it is worth noting these provisions provide a withdrawing employer "shall remain liable" for any Unfunded Liability relating to their retired employees. Employer offers no logical reason why, or what public policy would be satisfied, to release it from this liability simply because a different procedure/process was used to facilitate its eventual withdrawal from the County Retirement System. We can think of no public policy or legislative goal achieved by distinguishing Employer from a withdrawing employer, when both have Unfunded Liability relating to their retired employees.

10

B. *Ongoing Employers*

Employer asserts the only other statutory provision relating to Unfunded Liability applies to "ongoing employers" who have payroll relating to a participating employee/member in the County Retirement System. (Citing § 31453.5.) Employer asserts it is no longer an ongoing employer because all of its employees, who were members of the County Retirement System, have retired. It maintains the Legislature has not yet written a statute to impose Unfunded Liability on an "inactive employer," creating a "legislative gap."

We disagree with this interpretation of section 31453.5, which we conclude broadly applies to both active and inactive employers who have retired employees currently receiving benefits from the County Retirement System. Section 31453.5 provides: "Notwithstanding [s]ection 31587, and in accordance with [s]ection 31453 or 31510.1, the board may determine county or district contributions on the basis of a normal contribution rate which shall be computed as a level percentage of compensation which, when applied to the future compensation of the average new member entering the system, together with the required member contributions, will be sufficient to provide for the payment of all prospective benefits of such member. The portion of liability not provided by the normal contribution rate shall be amortized over a period not to exceed 30 years."

Section 31453.5 clearly describes two ways an employer pays into the County Retirement System. The first sentence of section 31453.5 refers to the "normal contribution rate" and provides a methodology to calculate this sum. The second sentence discusses payment of any deficit, i.e., the Unfunded Liability. (*Ibid.*) This sentence does not suggest how the deficit should be calculated. It only describes the debt repayment assistance of amortization.

To support Employer's argument section 31453.5 did not authorize the County Retirement System's actions in this case, it created the following definitions

11

based on different categories of employees: (1) an "ongoing employer" has on their payroll employees who are members of the County Retirement System; and (2) an "inactive employer" has only retired employees, who are no longer on payroll, but are members of the County Retirement System.

Employer bases these definitions on section 31453.5's *methodology* for calculating a "normal contribution rate." It explains that because a "normal contribution rate" is based on a percentage of payroll, the entire statute only applies to "ongoing employers." Employer insists we must treat the statute's payroll methodology, used to calculate one form of a payment, as a reason to significantly limit application of the entire statute to only certain kinds of employers. This construction would require us to ignore statutory language and essentially rewrite the statute to make the two payment obligations conditional on an employer's current payroll status. This we cannot do.

"Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them 'their usual and ordinary meaning.' [Citation.] 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.] 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387-388.)

Moreover, """[p]ension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved."' [Citation.] 'Any ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner, but such construction must be consistent with the clear language and purpose of the statute.' [Citation.]" (*Irvin v. Contra Costa County Employees' Retirement Assn.* (2017) 13 Cal.App.5th 162, 170-171.)

12

We begin by analyzing Employer's statutory construction that forms the legal premise of its argument. Employer asserts section 31453.5 provides the "normal contribution rate" must *always* be calculated as a percentage of payroll, making "payroll" a prerequisite for paying contributions into the County Retirement System. The usual and ordinary meaning of the statute's words do not support this interpretation. Section 31453.5 provides "the board *may* determine . . . contributions on the basis of a normal contribution rate which shall be computed" as a "percentage of compensation." (§ 31453.5.) "Courts routinely construe the word 'may' as permissive and words like 'shall' or 'must' as mandatory. [Citations.]" (*Jones v. Catholic Healthcare West* (2007) 147 Cal.App.4th 300, 307.) Thus, the board may determine an employer's contribution using a different methodology.

The court in *Orange, supra,* 192 Cal.App.4th at page 35, reached a similar conclusion. It held the Legislature's use of the word "may" meant the County Retirement System was not mandated to determine an employer's contribution by dividing the cost into normal cost and Unfunded Liability. Rather, the County Retirement System "could employ another method to predict the [Employer's] future contributions." (*Ibid.*)

The language of section 31453.5, when given its usual and ordinary meaning, does not support Employer's theory payroll status is a necessary element, or for that matter, a limiting factor in the County Retirement System's authority to assess Unfunded Liability payments. Employer fabricated definitions, distinctions, and employer classifications because there was no statutory support for its argument. Section 31453.5 contains no express limitations on the County Retirement System's authority to seek payment of Unfunded Liability, and we will not rewrite the statute to add one. We conclude the language of the statute clearly gives the County Retirement System broad authority to assess Unfunded Liability, as long the employer's current and retired employees are members of the County Retirement System.

13

Employer's theory does not take into consideration section 31453.5's description of the two payments, and other provisions in the statutory scheme expressly recognize the normal contribution rate is independent from the Unfunded Liability. To begin with, the first sentence of section 31453.5 suggests a methodology for determining the normal contribution rate; and the second sentence provides no guidance on how to determine Unfunded Liability. It merely defines the Unfunded Liability as "[t]he portion of liability *not provided by* the normal contribution rate . . . ." (§ 31453.5.) However, other provisions in the statutory scheme address the timing and methods used to calculate Unfunded Liability. Employer's attempt to apply a "payroll condition" methodology to Unfunded Liability would be at odds with those provisions. "Statutes must be harmonized, both internally and with each other whenever possible. [Citations.] (*Sampson v. Parking Service 2000 Com., Inc.* (2004), 117 Cal.App.4th 212, 226.)

For example, the Legislature enacted several provisions (sections 31453, 31453.5, and 31453.6) addressing Unfunded Liability. It recognized the need to address the possibility of future financial difficulties and contemplated periodic corrective measures to address a shortfall in funding for retirement benefits. "[U]nderfunding can occur for a number of reasons and '[a]ctuarial methodology is designed to address and consider unforeseen events on a regular basis so as to ensure the financial integrity of the retirement system.' Indeed, [Retirement Law] itself *requires* that each actuary for the retirement system conduct a formal actuarial valuation 'within one year after the date on which any system . . . becomes effective, and thereafter at intervals not to exceed three years.' (§ 31453; see also § 31454.) The actuary is therefore required to conduct a new valuation of the retirement system at least every three years and determine the extent to which prior assumptions must be changed." (*In re Retirement Cases, supra,* 110 Cal.App.4th at pp. 459-460, fn. omitted.) Based on the "actuarial valuation" the County Retirement System can "recommend to the board of supervisors the changes in the rates of interest, in the rates of contributions of members, and in county and district

14

*appropriations* as are necessary." (§ 31453, *italics added.*) This statute acknowledges there is a continuing obligation to assess the assets and liabilities needed for the retired employees' prospective benefits.

In addition, section 31453.6 authorizes the County Retirement System to "adopt a funding period of 30 years to amortize unfunded accrued actuarial obligations" unless amortization would "subject the fund to an unsound financial risk." This option is not available for payment of the normal contribution rate each fiscal year. The Legislature appreciated the Unfunded Liability could be significant because the funds needed for a lifetime of retirement benefits cannot be calculated by a precise mathematical equation, but depends on actuaries making sophisticated predictions, taking into account many variables. (See *In re Retirement Cases, supra,* 110 Cal.App.4th at p. 459 [Legislature anticipated possibility of future financial difficulties].) Providing amortization is an accounting tool that helps employers by smoothing out the debt over a longer period.

Employer's narrow construction of section 31453.5 is also at odds with our Constitution's provision giving the County Retirement System broad authority over sound actuarial funding of employee retirement benefits. Our Constitution grants "plenary authority and fiduciary responsibility for investment of moneys and administration of the system" to the retirement boards of public pension and retirement systems. (Cal. Const., art. XVI, § 17.) Specifically, the Constitution mandates that the County Retirement System's board has "the sole and exclusive fiduciary responsibility over the assets of the . . . retirement system" and must "administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries." (Cal. Const., art. XVI, § 17, subd. (a).)

We appreciate these provisions were enacted in 1992 after the Legislature and Governor raided the county's retirement funds for other budget shortfalls. (*City of San Diego v. San Diego City Employees' Retirement System* (2010) 186 Cal.App.4th 69,

15

79 ["This grant of exclusive authority over retirement system assets was intended to protect such boards from 'political meddling and intimidation' and to 'strictly limit the Legislature's power over such funds'"].) Employer suggests the plenary power is limited to issues related to the goal of protecting funds from other branches of the government. We disagree. The new constitutional provisions broadly give exclusive control over administration of the funding; expressly stating the purpose of conferring this authority is to "assure prompt delivery of benefits and related services to the participants and their beneficiaries." (Cal. Const., art. XVI, § 17.) The provision imposes a fiduciary responsibility over the assets, and consistent with this duty, determined the County Retirement System's board "shall have the sole and exclusive power to provide for actuarial services in order to assure the competency of the assets of the public pension or retirement system." (Cal. Const. art. XVI, § 17, subd. (e).) The clear purpose of these provisions was to not only to protect the retirement fund from being raided, but also to take whatever measures needed to "assure competency of the assets" required for full retirement benefits. (*Ibid.*) Section 31453.5 must be construed broadly to satisfy this goal.

Here, the County Retirement System's actuary predicted there was going to be a $3.3 million deficit with respect to Employer's 22 retired employees, and established a 20 year payment plan to help Employer amortize the Unfunded Liability. We conclude the County Retirement System had the authority to implement this corrective measure pursuant to its plenary power and section 31453.6.

IV. *Leave to Amend*

In the last paragraph of Employer's retroactivity argument, it asserts the court granted the motion for JOP without allowing Employer to conduct discovery regarding the County Retirement System's conduct towards several other similarly situated employers. It explained the cities of Capistrano Beach and Cypress had employees participating in the County Retirement System who all retired, making these

16

entities "inactive employers" like Employer.[2] Employer believed these entities were not being asked to pay an Unfunded Liability with respect to their retired employees. Employer concludes discovery would have supported its argument the 2015 Policy was an "impermissible retroactive application."[3]

The record shows Employer did not seek a continuance to conduct further discovery and amend its complaint. Additionally, Employer's opposition to the motion for JOP did not include a request for discovery or assert additional time was needed. At the hearing, Employer's counsel argued the matter should have been decided with a better developed record in a motion for summary judgment. He did not ask for additional time to conduct discovery, he simply suggested additional discovery would further develop potential due process claims. He certainly did not argue discovery would have supported Employer's claim the 2015 Policy was impermissibly retroactive, which is the point now being raised on appeal. For these reasons, we conclude the issue is waived. We cannot fault the trial court for failing to permit additional discovery if Employer did not specifically request this relief. In addition, in its briefing on appeal Employer does not explain how additional evidence *about other employers* would have proven the Unfunded Liability was retroactively applied to Employer. We agree with the trial court that the County Retirement System had authority to request payment of the $3.3 million Unfunded Liability pursuant to both its plenary power (Cal. Const. art. XVI, § 17) and section 31453.5.

---

[2] In the reporter's transcript of the hearing, counsel represented the entities were the Cypress Sanitation District and Capistrano Beach Parks and Recreation.

[3] In this appeal, employer's reply brief presents a new argument (in a footnote), that it should have been given leave to amend because any disparate treatment would support an equal protection claim. It is now well settled, "we need not [and do not] consider new issues raised for the first time in a reply brief in the absence of good cause . . . ." (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 214.) In this case, employer did not demonstrate good cause to consider this new issue.

17

DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.


O'LEARY, P. J.

WE CONCUR:


IKOLA, J.


GOETHALS, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOURTH APPELLATE DISTRICT
DIVISION THREE

| | |
|---|---|
| AL MIJARES et al.,<br><br>　　Plaintiffs and Appellants,<br><br>　　　　v.<br><br>ORANGE COUNTY EMPLOYEES'<br>RETIREMENT SYSTEM,<br><br>　　Defendant and Respondent. | G055439<br><br>(Super. Ct. No. 30-2016-00836897)<br><br>O R D E R |

　　　　The following attorneys have requested that our opinion filed January 23, 2019, be certified for publication:  1) Attorneys for Respondent; 2) Jennifer E. Zahry, general counsel for the Kern County Employees' Retirement Association; 3) Ashley K. Dunning, attorney for the Los Angeles County Employees' Retirement Association and the Alameda County Employees' Retirement Association; and 4) Johnny H. Tran, general counsel for the San Diego City Employees' Retirement System.  It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c).  The request is GRANTED.

　　　　The opinion is ordered published in the Official Reports.

19

O'LEARY, P. J.

WE CONCUR:

IKOLA, J.

GOETHALS, J.